**Charles MEOLA, Plaintiff,**

v.

**Abraham RIBICOFF, Secretary of Health, Education, and Welfare, Defendant.**

United States District Court
S. D. New York.
Aug. 9, 1962.

Albert H. Scipione, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., by Anthony H. Atlas, New York City, of counsel, for defendant.

EDELSTEIN, District Judge.

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), 42 U.S.C.A. § 405(g) (Supp. III, 1962), to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff's claim for the establishment of a period of disability—the so-called "disability freeze"—and for monthly disability insurance benefits.[1] The plaintiff has moved for summary judgment pursuant to Rule 56, Fed.R. Civ.P., 28 U.S.C.A. and the defendant has cross-moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R. Civ.P.

▮ In accordance with the statutory review procedure, 42 U.S.C. § 405(g) (Supp. III, 1962), 42 U.S.C.A. § 405(g), the defendant has filed, as part of his answer, a certified copy of the transcript of the hearing below, including the evidence upon which the findings are based. With such evidentiary matter available to supplement the pleadings, the defendant's motion will be treated as being, more properly, a motion for summary judgment. Rule 12(c) Fed.R.Civ.P. Accordingly, both parties contend that there is no genuine issue as to any material fact and that they are each entitled to a judgment as a matter of law.

The plaintiff seeks disability insurance benefits and the establishment of a period of disability as provided by the Social Security Act, § 216(i) (1), as amended, 42 U.S.C. § 416(i) (1) (Supp. III, 1962), 42 U.S.C.A. § 416(i) (1),[2] and § 215(b), as amended, 42 U.S.C. § 415(b) (c)

(Supp. III, 1962), 42 U.S.C.A. § 415 (b, c). His claim is that since August of 1949 he has suffered from angina pectoris heart disease and that his condition meets the statutory test of disability since it is of long continued and indefinite duration and prevents him from engaging in any substantial gainful activity.

The plaintiff was born in Italy in 1897. He attended four years of high school in Italy but was not graduated and did not receive a diploma. He was not gainfully employed in Italy and emigrated to the United States in 1913. He did not attend school in this country. In 1918, upon attaining age 21, he began his working career which, prior to his association with the Metropolitan Life Insurance Company in 1927, included the following jobs: piano finisher and polisher for a period of 7–8 years; inside retail furniture salesman for 2–3 years; inside and outside salesman for the Singer Sewing Machine Company for about 1–2 years. From 1927 to 1949 plaintiff was employed by the Metropolitan Life Insurance Company as a "debit" insurance agent. His responsibility as a "debit" agent was the house-to-house collection of premiums and his job involved much walking, stair climbing, and physical exertion. On July 5, 1949, the plaintiff, while working, experienced a pain in his chest and remained away from work the following day. After this initial attack, plaintiff returned to work for one week but again felt pain in his chest and felt that "he couldn't stand up."[3] He was taken home that day and never returned to his customary employ-

---

1. Section 216(i) (2) of the Social Security Act, as amended, 42 U.S.C. § 416 (i) (2) (Supp. III, 1962), 42 U.S.C.A. § 416(i) (2) enumerates the requirements for the determination of a period of disability. This so-called "disability-freeze" provision states that periods during which the individual was under a disability are to be eliminated from the individual's earnings record. And the individual's earnings record is the basis for arriving at the average monthly wage, 42 U.S.C. § 415(b, c) (Supp. III, 1962), 42 U.S.C.A. § 415 (b, c), upon which the benefits are based.

2. The statutory definition of disability appears in § 216(i) of the Act, as amended, 42 U.S.C. § 416(i) (Supp. III, 1962), 42 U.S.C.A. § 416(i) : " '[d]isability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *."

3. Record, p. 41.

ment. Plaintiff, however, utilized his license to sell insurance during the period from 1949–1960 but he did not earn more than $500 in commissions in any year. Plaintiff did not actively seek insurance clients but serviced only those persons seeking insurance referred to him as a "concession" by the Metropolitan Life Insurance Company. Mr. Meola has had no other gainful employment since leaving Metropolitan in 1949. In addition to commissions earned since the onset of his alleged disability, he has been collecting a pension from the Metropolitan Life Insurance Company of approximately $120 per month since August 1949.[4]

On March 22, 1956, the plaintiff filed an application with the Social Security Administration to establish a period of disability from March 31, 1952. On August 8, 1957, he filed an additional application for disability insurance benefits. These applications were denied by the Bureau of Old Age and Survivors Insurance upon a finding that the plaintiff was not under a statutory disability.[5] He then obtained a hearing before a Hearing Examiner, 42 U.S.C. § 405(b) (1958), 42 U.S.C.A. § 405(b), who, on

March 16, 1961, denied the benefits upon a finding that "at no time before March 22, 1956, when claimant filed his instant application, did he have a * * * physical impairment which was long continued, of indefinite duration and of such severity as to prevent him from engaging in some form of substantial gainful activity." [6]

There were no appearances by medical witnesses at the hearing. Plaintiff was the only witness and the medical evidence consisted solely of the following medical reports introduced into the record: reports dated March 29, 1956, June 26, 1957, May 20, 1958, and June 20, 1960, by Dr. Anthony Condreras; reports dated April 17, 1956, and July 1, 1957, by the Vanderbilt Clinic of the Columbia Presbyterian Medical Center. In addition the Appeals Council of the Social Security Administration received into evidence a medical report, dated May 2, 1961, submitted on plaintiff's behalf by Dr. Julius Burstein.[7] A review of the evidence at the hearing establishes that the plaintiff has been suffering from angina pectoris with attendant arteriosclerosis since 1949. An-

---

4. The defendant makes a point of arguing that by virtue of the plaintiff's income from his insurance commissions, disability pension, his wife's earnings and her social security benefits, that he was relieved of the economic necessity of finding substantial gainful employment. It is urged that plaintiff's inability to find substantial gainful employment does not result from a medically determinable disability but, rather, from the plaintiff's reluctance to seek such employment. The argument has no relevance in the context of this case where the sole issue turns on the availability of employment opportunities.

As for the effect of plaintiff's earnings on the question of substantial gainful activity, his average income of $500 per year from 1949–1960 did not reach the $1,200 per year considered by the Secretary to be presumptive evidence of ability to engage in substantial gainful employment. See Flemming v. Booker, 283 F. 2d 321, 324 (5th Cir. 1960); Hearings before the subcommittee on the Administration of the Social Security Laws of the House Committee on Ways and

Means, 86th Cong. 1st Sess. 925–31, (1950) (Testimony of Arthur E. Hess, Assistant Director in Charge of Disability Operations).

5. The application for the establishment of a period of disability was initially approved by the Bureau of Old Age and Survivor's Insurance on July 31, 1957, and established a period of disability commencing on August 10, 1949. On March 6, 1958, the Bureau notified the plaintiff that based on additional medical evidence showing an improved condition, it had been found that he had not established that he had an impairment or combination of impairments of indefinite duration and of such severity as to prevent him from engaging in any substantial gainful activity. The application was then denied.

6. Record, p. 16.

7. 20 C.F.R. § 403.710(c) (2) (1961) provides for the receipt of additional evidence by the Appeals Council if necessary for a full determination of the matter.

ginal pain was found to be precipitated by stair climbing and level walking but relief was achieved by the administration of nitroglycerine and peritrate. Albeit there was some conflict in the medical findings concerning the severity of the plaintiff's heart condition,[8] all the doctors' reports were in accord that the plaintiff could not engage in any occupation involving heavy physical labor or physical exertion.

In his decision, the Hearing Examiner recognized that the plaintiff could not engage in his former occupation as a debit agent because of the physical activity involved, but found, nevertheless, that:

"* * * Tested in the light of the claimant's past work history, his education, his physical and mental residual abilities, it must be found, and here is found, that the claimant has not established that he had, on or before March 31, 1952, an impairment, or combination of impairments, of indefinite duration and of such severity as to prevent him from engaging in any substantial gainful activity.

"* * * Tested in the light of the claimant's education, work history, training and experience and age, it appears, as is here found,

that he could have engaged in some form of clerical work or sedentary work not requiring heavy physical labor at least up to March 22, 1956."[9]

Plaintiff thereafter requested a review of the Hearing Examiner's decision by the Appeals Council of the Social Security Administration. The Appeals Council declined to review the Hearing Examiner's decision. The Hearing Examiner's decision thus became the final decision of the Secretary of Health, Education and Welfare. 20 C.F.R. § 403.-709(1) (1961). The plaintiff seeks a reversal of the decision, or, in the alternative, a remand to the Hearing Examiner in order that he may be represented by counsel at a new hearing. Meola also seeks an opportunity to produce additional medical evidence as to his condition. The plaintiff claims that (1) the findings of the defendant Secretary are not supported by substantial evidence in the record, and (2) that he was denied a fair and impartial hearing before the Hearing Examiner.

■ The statute, 42 U.S.C. § 405(g) (Supp. III, 1962), 42 U.S.C.A. § 405(g), while vesting this court with jurisdiction to review final decisions of the Secretary upon claims for benefits, expressly provides that the findings of fact of the

---

8. The reports of Dr. Condreras, plaintiff's personal physician, describe the plaintiff's condition as being more serious than is indicated in the reports of the Presbyterian Medical Center. Dr. Condreras describes the plaintiff's complaints as follows: shortness of breath on effort (walking or climbing stairs), weakness, tiredness, as well as precordial pain at rest which became more acute on effort. Blood pressure was reported normal but arteriosclerosis of the radial vessels, with coronary insufficiency, was consistently noted. Dyspnea, or breathlessness, was consistently noted, but there was an absence of grossly abnormal amounts of fluid in the heart tissue spaces. No X-ray or electrocardiograms had been taken since 1956. Record, pp. 67–68, 72–74, 81–82, 84–85.

The reports of the Vanderbilt Clinic of the Presbyterian Medical Center diagnose the plaintiff's ailment as arteriosclerotic heart disease with coronary sclerosis and angina pectoris. The supple-

mental report of July 1, 1957 indicates that the electrocardiogram, urinalysis and blood test were normal. This hospital report further states that the plaintiff continued to have mild angina on effort usually precipitated by stair climbing, but not by level walking. The report concludes that "he [Meola] is perfectly capable of doing full time work in any occupation safe [sic] those requiring heavy physical labor." Record, pp. 69, 75.

Dr. Burstein's report also describes plaintiff's condition as being more serious than described by the hospital. The report, dated May 12, 1961, notes marked progressive coronary insufficiency with marked dyspnea and precordial pain on slight excitement. Dr. Burstein concludes that the plaintiff has been disabled for 12 years with chronic progressive coronary insufficiency. Record, pp. 96–97.

9. Record, p. 16.

Secretary, if supported by substantial evidence, shall be conclusive. The review by this court, therefore, is not a trial de novo. This court may not substitute its own judgment for that of the Secretary and may not reverse the decision below on the ground that, based on its own reappraisal of the evidence, it would have reached a different result. Kraynak v. Flemming, 283 F.2d 302 (3rd Cir. 1960); Carqueville v. Flemming, 263 F.2d 875 (7th Cir. 1959). The substantial evidence doctrine limits the scope of this court's review to the issue of whether, viewing the record as a whole, there is evidence to support a reasoned determination of the Hearing Examiner after all the evidence supporting, as well as opposing, his conclusion has been taken into account. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950).

■ The statutory definition of disability "imposes a three-fold requirement: There must be a 'medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration'; there must be 'inability to engage in any substantial gainful activity' and the inability must exist 'by reason of' the impairment." Pollak v. Ribicoff, 300 F.2d 674, 677 (2d Cir. 1962). The findings of the Hearing Examiner as to the above three requirements are not specifically delineated and are less than clear. Accordingly, a closer analysis of the Examiner's decision is necessary to determine whether his findings satisfy the statutory requirements as enumerated in Pollak. Only after such a determination can the court exercise its function in review by measuring those findings against the substantial evidence standard.

The Examiner, on the one hand, explicitly recognized the physical limitations resulting from plaintiff's heart condition and found that plaintiff could not have found substantial gainful employment in work "requiring heavy physical labor. * * * " [10] But, on the other hand, the Examiner found that Meola did not have an impairment of "indefinite duration and of such severity as to prevent him from engaging in any substantial gainful activity." Finally, the Hearing Examiner found that plaintiff could find substantial gainful employment in "some form of clerical or sedentary work * * * ".[11] There is no doubt that the first requirement imposed by the statutory definition of disability has been met: Mr. Meola's angina pectoris condition is a "medically determinable physical * * * impairment which can be expected * * * to be of long-continued * * * duration * * * ." 42 U.S.C. § 416(i)(1) (Supp. III, 1962), 42 U.S.C.A. § 416(i)(1). Although not segregated specifically in the manner suggested by Pollak, the finding of the Hearing Examiner perforce must be that while plaintiff has a medically determinable physical impairment, said impairment, while preventing him from engaging in his former work as a debit insurance agent, does not prevent him from obtaining substantial gainful employment in clerical or other sedentary work.

■ The Examiner's finding that plaintiff's angina pectoris condition is a medically determinable physical impairment is not at issue herein. There is substantial evidence in the record to support such a finding. But the Hearing Examiner's further finding concerning the ability of plaintiff to engage in substantial gainful employment is another matter. The Examiner's suggestion that the plaintiff has available to him opportunities for substantial gainful employment in clerical or sedentary work is conjectural and speculative and fails under the standards laid down in Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960), and recently reaffirmed in Pollak v. Ribicoff, supra, and Rinaldi v. Ribicoff, 2 Cir., 305 F.2d 548. The Examiner's theory that Mr. Meola could engage in sedentary or clerical work violates the

10. Ibid.

11. Ibid.

principle formulated in Kerner that the determination of an applicant's ability to engage in substantial gainful activity "requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do?" Kerner v. Flemming, supra at 921 of 283 F.2d: Pollak v. Ribicoff, supra at 677 of 300 F.2d; Rinaldi v. Ribicoff, supra. Although there is enough evidence in the record concerning Meola's work experience, skills, and training on which to base a finding on the question of what Meola can do, the record is barren of any evidence on the question of the availability of employment opportunities for a man in his predicament.

It is evident that the plaintiff's angina pectoris condition would prevent him from pursuing his former occupation as debit agent, involving as it does stair climbing, a great deal of walking and exertion. And the prohibition against any occupation involving physical exertion or heavy labor would also preclude plaintiff from working as a piano finisher and polisher and would further prevent him from returning to activity in furniture or sewing machine sales. Plaintiff did not finish his high school education and has had no formal training in any vocations or trades. He was 59 years old when he filed his application to determine the period of disability and is now 65 years old. Meola's age, poor health, and limited training do not present an employer with a desirable combination of qualifications. Employers in the unskilled labor market might well turn Mr. Meola aside in favor of another, who, while not possessing the creditable attainment of twenty-two years in the service of one employer, still possesses the invaluable asset of good health.

■ It may well be, as the Hearing Examiner suggests, that the plaintiff's future lies in clerical or sedentary work. But this without more is wanting, for it contravenes the principle that "mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is avail-

able." Kerner v. Flemming, supra at 921 of 283 F.2d; Pollak v. Ribicoff, supra at 677, 300 F.2d. In Pollak, the Hearing Examiner found that Mrs. Pollak's arthritic condition had not reached a stage of sufficient severity to prevent her from engaging in substantial gainful activity, including teaching of languages and work in the jewelry trade. The Court, in reversing and remanding for a new hearing, found that Mrs. Pollak lacked the academic qualifications necessary for teaching in school. The prospect of obtaining pupils for private tutoring of foreign languages was, at best, a speculative one. Mrs. Pollak's capability in expanding her jewelry trade into a substantial gainful activity was unsupported by any evidence. The Court, in Pollak, ordered the remand since the finding as to availability of substantial gainful employment for the plaintiff was theoretical and conjectural and, therefore, not supported by substantial evidence. Pollak v. Ribicoff, supra at 678 of 300 F.2d.

Turning to the Examiner's finding herein, if the Examiner meant by clerical work, "office work," it is quite clear that Mr. Meola has never had experience in that type of work. Perhaps the plaintiff's long familiarity with insurance premium collections and insurance premium rates has provided him with such skills that, despite his age and unfavorable health status, he might still find employment. But there was no evidence that this was more than theoretical. The record does not contain even a suggestion as to what these employment opportunities would be.

This case differs from Graham v. Ribicoff, 295 F.2d 391 (9th Cir. 1961) and Rinaldi v. Ribicoff, supra, in that there government studies were incorporated into the record, showing that many types of jobs were filled by persons having back conditions similar to those of the applicants. In Rinaldi, the Court held that since the study indicated the availability of employment opportunities, it sufficiently answered the question as to claimant's ability to engage in substantial gainful

employment and that the Hearing Examiner's conclusion was supported by substantial evidence. No such evidence was introduced herein.

Although there is substantial evidence in the record to support the Hearing Examiner's finding as to a medically determinable physical impairment, the absence of any evidence to support the finding as to the ability of the plaintiff to engage in substantial gainful employment requires that the case be remanded to the Secretary with the instruction that he take further evidence and make findings on the question of the availability of substantial gainful activity for the plaintiff in clerical work, or any other work suited to plaintiff's abilities and limitations.

Plaintiff has claimed further that certain procedural defects in the conduct of the hearing rendered the hearing unfair. His specific complaints are: (1) that he was not represented by an attorney at the hearing and was in no position to protect his rights; (2) the hearing was conducted in a perfunctory manner and that the evidence consisted of written medical reports which were not inspected and read by plaintiff; and (3) that he did not understand the proceedings.

■■ As to the first claim, it is evident that plaintiff was duly notified of his right to have an attorney represent him at the hearing.[12] In addition to the specific statement in the Notice informing plaintiff of his right to be represented by counsel, a reading of the Notice of Hearing sent to plaintiff should have alerted him that the assistance of counsel would prove helpful. The Notice of Hearing contains a paraphrase of the statutory definition of disability and sets forth the administrative hearing procedure to be followed. The recurrence of legal terminology throughout the Notice would tend to challenge the comprehen-

sion of a layman. Plaintiff was not prevented from availing himself of counsel. The choice to be without counsel was his own. And even if there had been a deprivation of the right to counsel—and there clearly was not—such non-representation would not be a ground for reversal if, despite the absence of counsel, the plaintiff had a fair opportunity to be heard and was not prejudiced by counsel's absence. Ussi v. Folsom, 254 F.2d 842 (2d Cir. 1958); Butler v. Folsom, 167 F.Supp. 684 (W.D.Ark.1958). Plaintiff was given full opportunity to present his evidence and there was no prejudice in the hearing below.

■ As to plaintiff's second claim, that he had no opportunity to examine the evidence, the record establishes that plaintiff did in fact inspect the evidence prior to the commencement of the hearing and had familiarized himself with the material contained in the medical reports.[13] And the record demonstrates that there was an extensive inquiry into the plaintiff's claims and the medical evidence. There is no support for plaintiff's contention that the hearing was perfunctory.

■ The plaintiff's final argument is that the hearing lacked fundamental fairness in that he could not understand the proceedings. This contention is also untenable in view of the fact that plaintiff submitted a five page letter or brief, over his own signature, to the Appeals Council. The letter, apparently prepared by plaintiff, contains a thorough review of the facts and advances arguments in his own behalf. The document belies his claim that he failed to understand the proceedings. Scrutiny of plaintiff's testimony upon the hearing reveals that he comprehended the questions as well as the nature of the proceedings. I find that the hearing was held in accordance with the regulations and was fair and impartial.

12. The Notice of Hearing sent to plaintiff states:
"It is not required, but you may, if you desire, be represented at the hearing by a lawyer or qualified non-lawyer." Record, p. 25.

13. Record, p. 34.

The motions for summary judgment are denied. The decision of the Hearing Examiner is reversed and the matter is remanded to the Secretary so that he may take further evidence and make findings with respect to the availability of substantial gainful activity for the plaintiff in clerical work or other work suited to plaintiff's capabilities and limitations.

It is So Ordered.