Laura G. EDWARDS, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 4074.

United States District Court
W. D. South Carolina,
Greenwood Division.

Aug. 5, 1963.

**80**

W. H. Nicholson, Jr., Greenwood, S. C., for plaintiff.

John C. Williams, U. S. Atty., Robert O. DuPre, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, District Judge.

This is an action asking the District Court to review a final decision of the Secretary of Health, Education and Welfare, in accordance with Section 205(g) of the Social Security Act (42 U.S.C.A. § 405(g)).

After remand the final decision of the Secretary in this case was rendered by the Appeals Council, Bureau of Hearings and Appeals, Social Security Administration, Department of Health, Education and Welfare, adopting the recommended decision rendered by the Hearing Examiner and making that decision its own. The final decision holds that the plaintiff is not entitled to a period of disability or to disability insurance benefits under Sections 216(i) and 223 of the Act, respectively, 42 U.S.C.A. §§ 416(i) and 423, for which plaintiff filed application September 26, 1960.

█ In order to meet the statutory definition of disability, plaintiff must show the existence of impairment or impairments precluding any substantial gainful activity, and that such disability commenced on or prior to March 31, 1955, the date on which she last met the earnings requirements of the Act, continuing uninterrupted to September 26, 1960, the date she filed her application.

█ The only issue in this case is whether or not the record reveals substantial evidence to sustain the decision of the Secretary. I may not substitute my judgment for that of the Secretary and may not reverse the decision of the Secretary on the ground that, based on my reappraisal of the evidence, I would have reached a different result. Kraynak v. Flemming (CA 3, 1959) 283 F. 2d 302; Meola v. Ribicoff (S.D.N.Y., 1962) 207 F.Supp. 658. The substantial evidence doctrine limits the scope of my review to the issue of whether, viewing the record as a whole, there is substantial evidence to support a reasoned determination of the Hearing Examiner after all the evidence supporting, as well as opposing, his conclusion has been taken into account. Universal Camera

Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Meola v. Ribicoff, supra. In such examination, however, the Court, "must not abdicate the convential judicial function." Brown v. Celebrezze, (E.D.S.C., 1962) 210 F.Supp. 692, 694.

"Substantial evidence" means more than a mere scintilla—it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Haxton v. Flemming, D.C., 183 F.Supp. 2. In order to determine the sufficiency of the evidence, in terms of the Social Security Act, the Court must scrutinize the record as a whole and the Court must assume responsibility for the reasonableness and fairness of the decision. Shields v. Folsom, D.C., 153 F.Supp. 733; Brown v. Celebrezze, supra.

The plaintiff was born December 22, 1912. She finished the seventh grade in school. She has worked for a textile mill since she was fourteen years of age. She is married and has two children. Her husband is a textile worker.

The following is a record of the leaves of absence of the plaintiff at the mill where she worked: From April, 1948, to June, 1948, because of asthma; from August 14, 1948, to September 7, 1948, no reason shown; from October 22, 1948, to January 25, 1949, for bronchial asthma; from March 4, 1950, to May 16, 1950, bronchial asthma; from September 25, 1950, to January 1, 1951, bronchial asthma. Plaintiff was unable to return to work when the last leave expired and her employment was terminated by her employer. Plaintiff has not worked any since that time except for three nights, commencing March 24, 1952, at another mill a distance of ten miles from her home, while she was drawing unemployment compensation, but she had to quit this job because she did not have transportation; however, shortly thereafter plaintiff was sick and had to go to bed.

From the latter part of 1948, to November, 1952, the plaintiff was visited by her doctor, Dr. W. J. Holloway, sixty-six times, twenty-two of which were visits while she was in the hospital. Dr. Hollaway stated that the plaintiff "has had severe asthma off and on since 1948. During the several years I treated this patient she was incapacited due to bronchial asthma from four to six months, out of the year."

After 1952, plaintiff was treated by Dr. Paul Pritchard who stated on January 4, 1961, "This is to certify that I rendered medical services to Mrs. Laura G. Edwards (Wilbur) from December 1952 to August 1958, while she was living in Ware Shoals, S. C. It is my opinion that she has been disabled because of bronchial asthma and rheumatoid arthritis to perform any gainful occupation from 1952 to present." Dr. Pritchard treated or examined the plaintiff thirty-eight times between December 15, 1952, and December 28, 1955, for asthma and for nausea and other stomach distress due to asthma medications plaintiff had to take.

Dr. A. D. Taylor of Charlotte, North Carolina, who treated the plaintiff stated that he last saw the plaintiff in April, 1950, when she had suffered a "flare-up of asthma which had required hospitalization". He gave a diagnosis of "bronchial asthma and allergic rhinitis".

In 1958, plaintiff's treatment was assumed by Dr. G. H. Dillard, an internist, and his final diagnoses of November 2, 1960, were as follows: "1. Pneumonitis, atypical, cause undetermined. 2. Gastroenteritis, acute, subsiding, associated with recent URI. 3. Chronic bronchitis, moderately severe, secondary to prolonged bronchial asthma. 4. Bronchial asthma, chronic, moderately severe, cause undetermined. 5. Rheumatoid arthritis involving multiple peripheral joints. 6. Obesity, exogenous."

Dr. J. A. McQuown, an orthopedic surgeon examined plaintiff on October 8, 1962, at Government expense, and made the following finding: "This is a 50 year old white female who is examined in my office on 10–8–62 with chief complaint of difficulty in her hands and feet. She

has history of long standing disability secondary to rheumatoid arthritis. At the time of this examination her major disability is noted to be in the region of her wrist joints bilaterally with concomitant involvement of her hands to a lesser degree. She had some bilateral knee difficulty and a concomitant degree of severe forefoot disability as a result of this disease. X-Rays showed extensive destruction of the wrist joints. All findings are suggestive of advanced rheumatoid arthritic change."

Another internist, Dr. R. M. Christian, examined the plaintiff on October 8, 1962, at Government expense, and made the following diagnoses: "1. Bronchial asthma, severe with chronic pulmonary fibrosis and emphysema. 2. Rheumatoid arthritis. 3. Chest wall pain. 4. I do not find symptoms characteristic of either angina pectoris or congestive heart failure." This doctor further stated, "I feel that she has very definite asthma and certainly a moderate amount of pulmonary difficulty constantly. This does not improve much with therapy and I believe will be progressively worse over the years. She also has, I feel, rather severe rheumatoid arthritis and in my opinion this is her greatest problem at the present time."

The records of the Greenwood Hospital disclose that plaintiff was hospitalized in March, August and October, 1950, for asthma, and two admissions in 1951, for temporary inflammation of the stomach and intestines (acute gastroenteritis).

Reports of the Self Memorial Hospital show plaintiff's admission to the hospital on September 19, 1959. After sufficient improvement to permit plaintiff's discharge on October 10, 1959, her asthma was diagnosed as chronic, recurrent, severe. Plaintiff next entered the hospital on February 9, 1960, for a recurrence of arthritis. Dr. Dillard recorded that her bronchitis had not abated since the fall of 1959, and that this and the asthma had been persistent and fairly bad from time to time, that mild to moderate emphysema had been present since he had known plaintiff. After treatment plaintiff's arthritis of hands, wrists, ankles and feet improved but her bronchitis or asthma did not improve, the latter remaining persistent and moderately severe. Plaintiff next entered the hospital on October 15, 1960, and at discharge the next month "her asthma though present was relatively mild" her "arthritis had subsided to the point where it was asymptomatic", although her left wrist remained quite stiff.

The plaintiff testified that she controls her asthma by going to bed, taking medicine and relaxing when she feels an attack coming on, however, if she exerts herself she starts coughing and has an attack of asthma. Since 1951, when she was unable to return to work, all the plaintiff has been able to do is to wash dishes, to make beds sometime, do some cooking with the assistance of her husband and daughter, do some washing but no ironing or sweeping; she tries to do anything that she possibly can. She has had to give up her work in Sunday School, the Training Union and Church.

Plaintiff's husband testified that his wife did not return to work when her leave expired at the mill because she was not able to work; that his wife tried to go back to work sometime in 1951–1952, but she was not rehired; that his wife applied to the Pilot Life Insurance Company for insurance in 1952, and was refused because of asthma and arthritis; that his wife has been in bad health for a good many years, but it has gotten worse since 1952; that she does a little housework but he does most of it with his daughter's help; that his wife does what she is able to do but she has to rest most of the time.

Mrs. Campbell testified that she has known the plaintiff since 1922, that the plaintiff, with her family, lived in their apartment and she saw her every day, that plaintiff was in bed part of the time during 1955, 1954, to 1959; plaintiff did not have breath to work; that she carried plaintiff her meals lots of times when plaintiff was not able to cook; that plaintiff had rheumatism; that plaintiff's husband did most of the housework; that

she also worked in the plant with the plaintiff but that plaintiff finally got to the place she could not work.

Reverend Jack Gregory testified that he is twenty-eight years old and that he is a cousin of the plaintiff and has known the plaintiff all of his life; that they went to the same Church and were together on a trip to Ridgecrest, North Carolina, in the summer of 1951, and while there she had a bad choking spell and was very sick, he brought her home at twelve o'clock at night; plaintiff's son and he were brought up together and he has been in and out of plaintiff's home frequently, he has seen her have these attacks of asthma that would cause her to be in bed for three months at a time; that even in 1950, before he finished high school she was having these attacks of asthma; in April, 1958, when he came back to Ware Shoals as pastor the plaintiff was very ill. She was still having attacks of asthma much more serious than before. The plaintiff also had rheumatic pains and her hand is drawn.

Mrs. Garren is thirty-eight years old and testified that she remembers the plaintiff since she was six years old and lived near the plaintiff until about six years ago; she knows that the plaintiff has had asthma for many years and is not able to work; that she has been in the hospital quite a bit; the plaintiff also had arthritis which made her wrists and hands swell, that she is not able to do but very little of her housework.

W. T. Bishop, Employment Manager of the Mill where plaintiff worked, wrote the Social Security Administration regarding the plaintiff: " * * * and it it is my opinion that the employment records showing the frequency of her illnesses may cast the most light from our files. To the best of my knowledge I recall that this employee was frequently out due to personal illness and since 1950 I have no knowledge of her working. * * *"

Louie M. Cobb, Spinning Room Supervisor at the Mill where plaintiff worked, in a statement to the Social Security Administration, said that the plaintiff was under his supervision during the various periods she was employed, " * * * I do recall that she had to be off the job or had to be permitted to go home from the job a great deal and I particularly recall that she used to faint a lot, * * *".

In a statement given to the Social Security Administration Jennie R. Hayns says that she has known the plaintiff for a little over thirty years and first knew her when she started working in the mill at Ware Shoals, where she worked also and that "* * * as far as I know Laura G. Edwards worked all the time she possibly could and that when she was not working it was because she couldn't due to her asthma or on two occasions, when she had children; that Laura G. Edwards suffered from a choking type of asthma which on many, many occasions caused her to faint both on the job and at home; that Laura G. Edwards was a conscientious worker and kept up with her work when she worked; that she kept a clean house and was not lazy; that she was clean and tidy; that when she had her numerous asthma attacks she would have to have a doctor and she would be bedridden for awhile; that the period she was incapacitated varied in length varied from a few days to months; * * *".

The burden is upon the plaintiff to establish that she had such disability as would entitle her to rights under the Social Security Act. Burnett v. Flemming, D.C.Ohio, 1960, 190 F.Supp. 546; Farley v. Ribicoff, D.C., 203 F.Supp. 721. But I accept what Chief Judge Biggs of the Third Circuit, designated to sit in the District Court, said in Klimaszewski v. Flemming, D.C.E.D.Pa., 1959, 176 F. Supp. 927, 932: "The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally." See also, Adams v. Flemming, C.A.Vt., 1960, 276 F.2d 901.

The statutory definition of disability imposes a three-fold requirement: (1) there must be a "medically determinable physical or mental impairment which can be expected to result in death or to

be of long-continued and indefinite duration"; (2) there must be "inability to engage in any substantial gainful activity"; and (3) the inability must exist "by reason of" the impairment. Pollak v. Ribicoff (C.A.2, 1962) 300 F.2d 674, 677; Meola v. Ribicoff, (S.D.N.Y.1962), 207 F.Supp. 658, at 663. Plaintiff's asthma, arthritis and other impairments are certainly medically determinable and can be expected to be of long-continued duration. 42 U.S.C.A. § 416(i) (1). As to the second and third requirements, the Hearing Examiner found that the "evidence fails to establish that claimant has been continuously unable to engage in any substantial gainful activity by reason of the severity of her impairment since on or before March 31, 1955, and continuously thereafter through the date of the filing of the application for disability benefits". The Hearing Examiner further found, "Even assuming that the claimant could not return to her previous job as spinner in a textile mill (which the Hearing Examiner does not concede), there are many other jobs to which she could transfer the skills that she acquired in her previous job with a minimum of adjustment. For example, with her demonstrated observational skills, she could with little or no training perform sedentary or light simple visual and inspecting tasks, such as finishing inspector in the knit goods industry, egg candler, stocking inspector in the hosiery industry, or assembling, packaging, or sorting materials in accordance with specific instructions. * * * There are many job opportunities in our present society, the duties of which this claimant could successfully perform despite her impairment. * * *"

■■ The Examiner concludes that plaintiff has available to her opportunities for substantial gainful employment in light or sedentary work but such conclusion is conjectural and speculative under the test laid down in Kerner v. Flemming (C.A.2, 1960) 283 F.2d 916, 921, recently re-affirmed in Pollak v. Ribicoff, supra, and adopted by the Ninth Circuit in Graham v. Ribicoff (C.A.9,

1961), 295 F.2d 391, 394. The rule formulated in the Kerner case is that the determination of an applicant's ability to engage in substantial gainful activity "requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do." Kerner v. Flemming, supra, 283 F.2d at 921; Graham v. Ribicoff, supra, 295 F.2d at 394. The Examiner's finding that plaintiff could engage in light or sedentary work is without factual support in the record and thus violates the above rule, i. e., there is no "substantial evidence" in the record to support the Secretary's findings that Mrs. Edwards is able to engage in some form of substantial gainful employment of a light or sedentary nature.

■ The plaintiff does not have the burden to introduce evidence to negative every imaginable job open to a woman with her impairments, and of her age, experience and education, it is enough if she offers evidence of what she has done, of her inability to do that kind of work any longer, and of her lack of particular experience for any other type of job. See, Rice v. Celebrezze, (C.A.6, 1963) 315 F.2d 7.

The Hearing Examiner apparently gave little consideration to the evidence that points to plaintiff's complete inability to do any sustained activity. The record discloses that plaintiff has asthma and complains of shortness of breath on exertion and "no breath" to carry on any sustained activity; that she has pulmonary fibrosis and emphysema; that she has rheumatoid arthritis involving multiple peripheral joints, one of her wrists is stiff, all of which seriously impair her ability to hold down any position requiring continuous attention or activity. The record does not disclose any evidence that there are employment opportunities available for the very limited and uncertain services plaintiff offers. "If there is no market for the services he is able to render then he is truly disabled within the meaning of the statute." Ferran v. Flemming, (C.A.5, 1961) 293

F.2d 568, 571; Pope v. Celebrezze, (W.D. N.C., 1962) 209 F.Supp. 392, 395.

One doctor gave as his opinion that the plaintiff "Has had severe arthritis off and on since 1948. * * * She was incapacitated due to bronchial asthma from four to six months out of the year"; another doctor gave as his opinion that the plaintiff "has been disabled because of bronchial asthma and rheumatoid arthritis to perform any gainful occupation from 1952 (the date he first saw her) to present". Dr. Christian, who examined plaintiff for the Government, gave as his opinion that "She has very definite asthma and certainly a moderate amount of pulmonary difficulty constantly. This does not improve much with therapy and I believe will be progressively worse over the years." Dr. McGowan, orthopedic surgeon, who examined plaintiff at Government expense, says that "All findings are suggestive of *advanced* rheumatoid arthritic change." (Emphasis added) The expert opinions of physicians as to disability are not binding on the Examiner, but an expert opinion to that effect which is not seriously controverted by substantial evidence to the contrary supplies this Court with a proper ground, *inter alia*, for reversal. Teeter v. Fleming, (C.A.7, 1959) 270 F.2d 871, 77 A.L.R.2d 636; Pope v. Celebrezze, supra, 209 F.Supp. 392.

As to the three nights plaintiff worked at another mill in 1952, which ended when plaintiff's means of transportation ceased, the record shows that during the time she was working she had to leave the plant several times and her husband testified that she was sick several days afterwards. "Intermittent, sporadic or infrequent activity does not constitute ability to engage in substantial, gainful activity precluding establishment of disability under this chapter of the Act. Campbell v. Flemming, D.C.Ky., 1961, 192 F.Supp. 62; Randall v. Flemming, D.C.Mich., 1961, 192 F.Supp. 111. In other words, substantial gainful activities precluding establishment of disability within this chapter means performance of substantial service with reasonable regularity in some competitive employment and does not contemplate complete helplessness. Campbell v. Flemming, supra; Roop v. Flemming, D.C. Va.1960, 190 F.Supp. 820; Ellerman v. Flemming, D.C.Mo., 1960, 188 F.Supp. 521. Substantial gainful employment is not to be taken to mean total, absolute, complete full-time activity for hire or compensation. It means a significant quantity of fairly constant physical, mental or mixed physical and mental service productive of value or benefit. It means employment that has substance." Lightcap v. Celebrezze, (D.C.Pa., 1962) 214 F. Supp. 209.

My review of the entire record convinces me that the plaintiff's earning capacity and capabilities in engaging in any substantial gainful activity are negligible if not non-existent.

Under the foregoing authorities, and the evidence in this case, I must conclude that the findings of the Secretary as to the establishment of a period of disability and disability insurance benefits are not supported by substantial evidence on the record considered as a whole and under the appeal given by 42 U.S.C.A. § 405(g), the conclusion of the Secretary that the plaintiff was not entitled to the period of disability and disability insurance benefits was clearly erroneous, was incorrect, and must, therefore, be reversed, and I find that the plaintiff's impairments were of such severity as to make plaintiff continuously unable to engage in any substantial gainful activity as of September 25, 1950, and that the plaintiff is entitled to a period of disability and to disability insurance benefits under the Social Security Act, as amended, for which she applied.

It, is, therefore, ordered, that the decision of the Secretary in this case be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.