Nicholas A. **MORRONE**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**Civ. A. No. 73–260.**

United States District Court,
E. D. Pennsylvania.

March 19, 1974.

Frank Carano, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Gilbert J. Scutti, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

This is an action under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the

Secretary of Health, Education and Welfare (the Secretary) denying Social Security disability insurance benefits to the plaintiff, Nicholas A. Morrone. The decision rendered by the hearing examiner on July 17, 1972, became final when the Appeals Council denied plaintiff's request for review on December 6, 1972. The matter is before us on the cross motions of the parties for summary judgment.

The sole question at hand is whether there was substantial evidence in the record to support the finding of the Secretary that the claimant was not entitled to disability insurance benefits on an application filed December 1, 1970, on plaintiff's behalf by his sister. "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *accord*, Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir.), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). A careful review of the record and briefs, as well as argument in chambers, leads us to conclude that the Secretary's determination was not based on substantial evidence; therefore, the plaintiff's motion for Summary Judgment will be granted and the defendant's motion denied.

II. *Applicable Statutory Definitions*

To qualify for disability insurance benefits and for a period of disability under sections 223 and 216(i) of the Social Security Act, 42 U.S.C.A. §§ 423 and 416(i), an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and for a period of disability, and be under a "disability" as defined in the Act.

The term "disability" is defined in section 223 to mean:

(d)(1) . . .

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

(B) . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) . . .

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2), an individual whose services or earnings meet such criteria shall . . . be found not to be disabled. [*See also* 20 CFR § 404.-1532–.1534.]

(5) An individual shall not be considered to be under a disability unless he

furnishes such medical and other evidence of the existence thereof as the Secretary may require.

For purposes of establishing a period of disability under. section 216(i) of the Social Security Act, as amended, the same disability provisions as contained in section 223(d)(1)(A), (2)(A), (3) and (5) of the Act, quoted *supra* are applied.

Plaintiff last met the special insured status requirements of the Act on June 30, 1959. Therefore, plaintiff must establish that his disability began on or before that date.

## III. *The Facts of Record*

The application for a period of disability and disability insurance benefits filed on December 1, 1970, alleges that plaintiff became unable to work in May 1954, at age 29, due to nervous and mental disorders. The plaintiff, born on May 31, 1925, completed high school and two to four years of electronics schooling at Temple Technical Institution before serving on active duty in the United States Navy from July 28, 1943, until March 14, 1946, and from October 12, 1951, to July 22, 1952. According to plaintiff's sister, who testified on his behalf, he engaged in television repair work between 1946 and 1951 and for a short time after his discharge from the Navy in 1952. However, in 1955, the Orphans Court of Philadelphia County declared him legally incompetent and appointed the Tradesmen's Bank and Trust Company, now the Provident National Bank, as guardian of his estate. Plaintiff's niece testified that she noticed a big change in him about 1957, at which time he refused to wash and shave. After plaintiff's mother died in 1964, the Orphans Court appointed his sister guardian for him. Plaintiff is currently receiving a disability pension from the Veterans Administration; since April of 1972 twenty-five dollars of the pension amount goes directly to plaintiff while his sister gets $135 to provide for his care and support.

A report from the United States Naval Hospital in San Diego showed that plaintiff was hospitalized there on March 19, 1952, for treatment of a neuro-psychiatric disorder. He was transferred to the United States Naval Hospital in Oakland on May 29, 1952, for study and treatment. His condition was described as an emotional disorder, characterized by depression, anxiety, and tension.

The plaintiff was next hospitalized at Roseneath Farms in Philadelphia from May 3 to May 8, 1954. During examination, he showed no appropriate affective tone, manifested excessive blocking, and was not consciously evasive, but he did show evidence of having had hallucinations. The plaintiff was described as irresponsible, incompetent, and lacking in judgment for his own best interest. His behavior was unpredictable. His condition at date of discharge was unimproved and prognosis was very poor. The diagnosis was chronic schizophrenia, paranoid type.

A report from Eugenia Memorial Hospital, a psychiatric hospital in Chestnut Hill, revealed that the plaintiff was admitted on July 6, 1954. He appeared withdrawn and seclusive and at times became very disturbed, over-active, hostile, and belligerent. He improved under electro-convulsive therapy. Laboratory studies were within normal limits, except for x-rays of the thoracic spine which showed fracture of the seventh thoracic vertebra. The plaintiff's wife phoned on August 15, 1954, to say that he was not returning because he had found employment. While the plaintiff had improved, the Medical Staff felt he was not ready to be discharged. His condition was diagnosed as schizophrenic reaction, acute type.

A report from the Veterans Administration Hospital in Philadelphia showed admission on January 18, 1955. Plaintiff confined himself in the dormitory and refused to talk to anyone. In was reportedly evident from his behavior, a suspicious and antagonistic attitude, a certain degree of stoppage of thought,

and confusion, that the plaintiff was suffering from paranoid schizophrenia based on the presence of auditory hallucinations. It was further reported that there was obvious emotional disharmony, with inappropriate smiling and at times marked hostility and suspiciousness. When discharged from the hospital on February 16, 1955, his condition was diagnosed as schizophrenic reaction, paranoid type, acute, severe, mentally incompetent. The stress and predisposition were unknown; however, incapacity at that time was marked.

Plaintiff was readmitted to Eugenia Memorial Hospital on June 15, 1955, at which time he was hostile and suspicious and expressed the belief that he was "railroaded" into the hospital by his family. He was given electroshock therapy and insulin. When he eloped from the hospital on July 4, 1955, he was considered confused, unimproved, and incompetent. At that time, his schizophrenia, paranoid type, was described as severe.

He was hospitalized again in the Veterans Administration Hospital in Philadelphia on January 15, 1956, for six days. The plaintiff seemed to have little interest in doing anything but sitting in a chair daydreaming with little show of emotion except irritability; he gave a picture of chronic schizophrenia. At this time, he had a chronic schizophrenic reaction, residual type, moderate, treated and improved. While he was diagnosed as mentally competent, his incapacity still was found to be moderate.

Reports from the Veterans Administration Hospital in Coatesville showed that the plaintiff was hospitalized on May 29, 1956. Physical and neurological examinations were essentially within normal limits. X-rays of the spine showed what appeared to be old compression fractures of the bodies of the third, fourth, fifth, and sixth dorsal vertebrae with rather marked compression of the body of the sixth vertebra. All other routine laboratory studies, including electrocardiograms and serology, were within normal limits. The plaintiff was started on Chlorpromazine, a tranquilizer, on June 2, 1956. He appeared less restless and tense and more sociable than on admission. Also, he appeared less antagonistic and belligerent and showed more interest in his surroundings. A clinical psychological examination on June 11, 1956, showed that plaintiff was functioning intellectually around a dull normal level but that his extreme emotionality had probably greatly lowered his intellectual efficiency. There seemed to be a marked interference with his thought processes, such as preoccupations, autistic associations, and rigid problem-solving sets which reached psychotic proportions. There was some sexual confusion, striving for an identity which was so tenuous that a variety of repressed feelings broke through. When the plaintiff was seen at a staff conference on August 21, 1956, he was in good contact, coherent, relevant, pleasant, agreeable, and cooperative. In spite of the fact that he had been a qualified radio and television repairman and electrician, it was believed that he might not be able to function as such because of the residuals of his illness. The report showed further that although plaintiff had made a good hospital adjustment, he would need more intensive psychotherapy for a long period to make any deep-seated personality changes. On April 5, 1957, he was placed on trial visit in the custody of his sister and discharged from trial visit status effective July 5, 1958.

The plaintiff was voluntarily readmitted to the Veterans Administration Hospital in Coatesville on April 26, 1960, as a transfer from the Philadelphia Veterans Administration Hospital. He was put on trial visit to his sister again on July 29, 1960. Trial Visit Adjustment Reports dated October 10 and December 28, 1960, showed that he had located work and was employed in radio and television repair at $65 a week. He worked for Mort Farr as a television repairman for 28 weeks, forty hours per week, earning a gross amount of $1,860. This 28 weeks of work is the only re-

ported work and earnings of the claimant during the entire period from 1952 to the present.

Dr. Claiborne T. Smith, Jr., specialist in psychiatry, examined the plaintiff on September 20, 1961. On mental status examination, the plaintiff was neatly dressed and cooperative. He was oriented in all spheres. There was no evidence of any gross thought disorder, and conceptual thinking based on interpretation of proverbs was adequate. Plaintiff was vague about hallucinations, but said he heard voices "once in a while." No delusions were elicited. Dr. Smith concluded that the plaintiff appeared to manifest schizophrenia in remission, well-maintained on a daily dosage of 50 milligrams of Thorazine taken four times a day. He indicated that secondary gain was now a big factor for him and that his motivation for employment was poor. Dr. Smith stated that there was no reason for why the plaintiff could not be employed in clerical work or manual labor not involving a great deal of stress. He felt, however, that the plaintiff "would manage to get himself fired in a short time through poor motivation." He indicated that the plaintiff would not markedly benefit from further treatment. The diagnosis was schizophrenic reaction, chronic, undifferentiated, in remission.

A report from a Veterans Administration Outpatient Clinic dated February 10, 1971, showed that the plaintiff was adjudicated 100 percent disabled from October 15, 1954, and incompetent from July 4, 1955, as rated by the Adjudication Division on August 29, 1955.

Dr. Henry E. Clare, psychiatrist, examined the plaintiff on March 9, 1971, at the request of the Social Security Administration. Dr. Claire was of the opinion that the plaintiff suffered from chronic paranoid schizophrenia and was unable to work at that time because of anxiety and paranoid thinking. He recommended a trial of intramuscular Prolixin Enathate and possibly a day hospital program. He questioned the plaintiff's ability to manage his own benefits in his own self interest.

In sum, plaintiff has been seriously mentally ill suffering from chronic paranoid schizophrenia from 1952 to the present. He has been in and out of hospitals during that time and has never been declared cured of his illness. Over the period of the last 20 years, he has worked only sporadically; indeed, the only evidence in the record of gainful employment shows that plaintiff earned $1,860 for 28 weeks of work since 1954.

The Administrative Law Judge who reviewed this record made the following evaluation of the evidence at Tr. 13–14:

An analysis of claimant's total history: military, educational, vocational and medical develops an individual who, from about 1952, has been suffering from a mental condition which has necessitated his hospitalization on various occasions. It is also clear that he has had long term periods of remission during which he has been able to engage in substantial gainful activity. This was certainly the case through early 1961.

Though the medical evidence establishes that claimant was hospitalized for almost one year from May 1956 until April 1957, it is not thereafter established that his condition was present in a disabling form for a period of 12 continuous months. His employment in 1957, 1960 and 1961 established his capability to engage in substantial gainful activity. It is not suggested that claimant has, at any time, been completely free of his problem. The impression he left with Dr. Smith in September 1961 must be considered. The doctor notes his poor motivation for employment and stated that claimant could be employed in clerical work or manual labor not involving a great deal of stress.

The Veterans Administration's finding of a disability for the purpose of that agency's awarding a pension to claimant is not binding on the Social Security Administration for the pur-

poses of establishing a disability under Title II of the Social Security Act, as amended. See 20 C.F.R. Section 404.1525.

In view of the foregoing, the Hearing Examiner finds that it is not medically determinable that the claimant had an impairment or impairments of sufficient severity to prevent him from engaging in substantial gainful work while he enjoyed a disability insured status prior to June 30, 1959.

## IV. *Discussion*

Plaintiff has the burden of proving that he has a disability within the meaning of the Social Security Act, 42 U.S.C.A. §§ 416(i)(1), 423(d)(1). Robles v. Finch, 409 F.2d 84 (1st Cir. 1969), Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965). Establishing a disability is a two-step process. First, plaintiff must prove that he has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Second, plaintiff must prove that the impairment renders him unable to engage in any substantial gainful employment. Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966); Bujnovsky v. Celebrezze, 343 F.2d 868 (3d Cir. 1965). In addition, plaintiff must establish that he became "disabled" prior to the expiration of his insured status. Domozik v. Cohen, 413 F.2d 5 (3d Cir. 1969).

 In the instant case, plaintiff has clearly met his burden of proving that he was "disabled" with a mental disorder from as early as March 1952 that has continued to the present time. The evidence is undisputed and overwhelming that plaintiff has been suffering from chronic paranoid schizophrenia at least since 1952 and that he has been in and out of hospitals and clinics since that time. Dr. Smith's report on plaintiff's condition as of September 1961 is the sole evidence upon which the Secretary relied to support his finding that plaintiff's present disability was not continuous from before 1959 when his insured status was last effective.[1] Yet, while Dr. Smith diagnosed plaintiff's condition as "in remission," he also noted that plaintiff suffered from "schizophrenic reaction, chronic, undifferentiated." It is a matter of common knowledge that, at best, chronic paranoid schizophrenia is a devastating illness, and that remissions in absence of an acknowledged "cure" are likely to be temporary only. Dr. Smith never concluded that plaintiff was cured; in fact, he acknowledged that plaintiff's schizophrenia in remission was maintained on a daily dosage of 50 milligrams of Thorazine taken four times a day, and that he would not benefit from further treatment. Based on Dr. Smith's isolated comment about remission, the Administrative Law Judge reached the unsupported conclusion that plaintiff could engage in substantial gainful employment. Such a conclusion is an egregious overstatement, as reflected by the fact that the record shows that plaintiff has worked a total of only 28 weeks in the seven years prior to Dr. Smith's evaluation (not to mention, by way of hindsight, that plaintiff has not worked at all in the thirteen years since Dr. Smith's report).

 In relying on Dr. Smith's report, the Secretary contends that plaintiff was well enough to engage in substantial gainful employment; he cites Dr. Smith's statement that plaintiff's motivation for employment was poor and that secondary gain was a big factor. Dr. Smith did suggest that there was no reason why plaintiff could not be em-

---

1. We accept the Government's position that the requirements of the Veterans Administration differ from the requirements of the Social Security Act, and that therefore the Secretary of HEW was not bound by the Veterans Administration determination in 1954 that plaintiff was completely disabled. Rolenaitis v. Richardson, 336 F.Supp. 1235 (E.D.Pa.1972). Similarly, HEW was not bound by the Orphans Court adjudication in 1955 that plaintiff was legally incompetent.

ployed in clerical work or manual labor "not involving a great deal of stress." Yet, Dr. Smith conceded that he thought plaintiff would manage to get himself fired in a short time through poor motivation. The assumption of the Secretary seems to be that plaintiff's lack of motivation to work was a result of deliberate laziness. Considering the record as a whole, including all of plaintiff's medical and employment history, we find utterly no evidence to indicate that plaintiff's lack of motivation was anything other than a byproduct of his paranoid schizophrenia. We agree with the Court in Branham v. Gardner, 383 F.2d 614, 633 (6th Cir. 1967):

> Under ordinary circumstances, a Hearing Examiner's finding that an appellant for disability benefits lacked the motivation to work would be entitled to some weight, but when the appellant is suffering from psychoneurosis, lack of motivation to work is irrelevant. In such an affliction it is held that lack of such motivation to work is, in itself, one of the symptoms of the disorder from which appellant admittedly suffers.

The Branham court was dealing only with a psychoneurosis, a condition in which the patient's mental state is far less fragile than in the case of full-blown paranoid schizophrenia such as is involved here. Hence the court's observation in Branham is multiplied manifold in its application to the instant case.

 The fact that plaintiff worked as a television repairman from September 1960 to March 1961, earning a total of $1,860 is not substantial evidence of "substantial gainful activity" as that phrase is intended in the Act.[2] Twenty-eight weeks of work over more than 19 years while plaintiff has been suffering from chronic schizophrenia can be characterized only as sporadic, not sub-

stantial. The phrase "substantial gainful activity" as used in the Social Security Act implies employment with some degree of regularity. We agree with the court in Ellerman v. Flemming, 188 F. Supp. 521, 526 (W.D.Mo.1960) which held:

> The activity in which a claimant must be able to engage must not only be "gainful" but must also be "substantial." The determinative factor therefore, is not how substantial the gain, but how substantial the activity, in which the claimant can be gainfully engaged. . . . "Substantial", as used in the Act, supra, is synonymous in the sense of belonging to the real nature of "activity" which a person can perform. It connotes "activity" as being real or actual, as opposed to transitory or apparent. It contains the idea of "activity" which may be performed with some degree of regularity—not occasionally, sporadically or infrequently.

*But cf.* Kennedy v. Richardson, 454 F. 2d 376, 378 n. 3 (3d Cir. 1972) (found $775 of earnings from 1965 to 1968 insufficient to be characterized as "substantial gainful activity"); Meola v. Ribicoff, 207 F.Supp. 658, 661 n. 4 (S.D. N.Y.1962) (average income of $500 per year from 1949–1960 did not reach the $1,200 per year considered by the Secretary of HEW to be presumptive evidence of "substantial gainful activity") (citing Hearings before the Subcommittee on the Administration of the Social Security Laws of the House Committee on Ways and Means, 86th Cong. 1st Sess. 925–31 (1950)).

 We find that the Secretary's finding of no disability was not based on substantial evidence in the record considered as a whole. On the contrary, the overwhelming and undisputed evidence supports the plaintiff's claim for disability benefits. Hence, we reverse

---

2. The Government also says that plaintiff worked for an indeterminate amount of time and earnings in April 1957, but there is no hard evidence of such work in the Record. On the contrary, Exhibit 10 on page 69 of

the Record indicates that plaintiff's only reported earnings from 1955 to the present was the $1860 he earned from September 1960 to March 1961.

the decision of the Secretary and enter the following Order.

## ORDER

And now, this 19th day of March 1974, IT IS ORDERED that plaintiff's motion for summary judgment is hereby GRANTED and defendant's motion is hereby DENIED. The cause is remanded to the Secretary for a determination of the amounts of benefits to which claimant is entitled.