**Tini POLLAK, Plaintiff-Appellant,**

v.

**Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 238, Docket 27220.**

United States Court of Appeals Second Circuit.

Argued Feb. 20, 1962.

Decided March 9, 1962.

Stephen A. Wareck, New York City, for plaintiff-appellant.

Stanley F. Meltzer, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for the Eastern District of New York), for defendant-appellee.

Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.

FRIENDLY, Circuit Judge.

This is one of a growing number of actions under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), which require review of the application of the definition of "disability" in § 223(c) (2) of the Social Security Act, 42 U.S.C.A. § 423(c) (2), as regards disability insurance benefits, a definition which § 216(i) (1), 42 U.S.C.A. § 416(i) (1), makes also applicable to the determination, under § 215(b) (1) (B), 42 U.S.C.A. § 415(b) (1) (B), of periods to be excluded from the divisor in determining average monthly wages—the so-called "disability freeze."

The plaintiff, Mrs. Pollak, was born in Austria in 1899. She graduated from a commercial school in Vienna in 1915. From 1915 to 1919 she worked as a clerk in a bank there. She was married in 1922 and was later divorced. In the 1930's in Vienna she taught English shorthand, using the German "Gabelsberger system," twice weekly for one hour at a time for two consecutive years; she did some other teaching of English, of a rather minor sort. In her youth she also spoke French and Italian; however, she had no experience teaching these languages and is no longer fluent in them. She came to the United States in 1938. For eighteen years she "stayed with friends * * * on a big estate in Pennsylvania" where she "took turns cooking with the secretary and * * * looked after my friend, who was a semi-invalid, for several years." She received no salary but had no expenses for her upkeep; her only earnings came from making jewelry some six weeks a year at Christmas time. On her friend's death she moved, in May, 1956, to Flushing, where she has since lived in a rented room. In September she leased a work bench in the New York jewelry district on W. 48th St. and began to pursue her craft there, with earnings of $798.24 for that year. From January 1957 through May 1958, she held a clerical job at an office of the Chase Manhattan Bank at Eighth St. and Astor Place. This required her attendance only from 9:00 A.M. to 3:00 P.M.; afterwards she would go to her work bench for some three hours—whether she went daily is not clear. In 1957 she earned $596 from her jewelry work and $1549.39 from "other," presumably the bank.

Since the fall of 1956, Mrs. Pollak has suffered from progressive rheumatoid arthritis, for which she has been under medical care. By the second quarter of

1958 the ailment had progressed to the point that, as reported by her physicians, she had painfully swollen joints of the hands, shoulders, elbows, ankles and knees, marked restriction of motion, and "deformity"—whatever that may mean. In May, 1958, her job with the bank ceased; apparently this was due to a lay-off of part-time employees but plaintiff testified she would have been obliged to quit in any event because she found it too hard to get to work regularly. During the summer of 1958 she was in California; a doctor there confirmed the diagnosis of crippling rheumatoid arthritis. Since her release by the bank, her only earnings have been from her jewelry work, which she pursues some four hours a day three or four days a week; these amounted to $462.12 in 1958 and $531.00 in 1959.

On January 28, 1959, plaintiff applied for disability insurance benefits and the establishment of a period of disability as from May 1, 1958. The application was denied initially and again on reconsideration. A hearing was held on March 25, 1960.

The evidence established the following facts in addition to those already summarized: One physician, who had last examined plaintiff on March 21, 1958, reported in February, 1959, that she "cannot work"; another, who had continued to see her, reported, at the same time, that she had become unable to work in May, 1958; two others gave March and April, 1958, as the dates when this inability developed. In addition to these four reports on the government forms, the record contains two detailed medical discussions by physicians who had seen Mrs. Pollak through the date of the hearing. One of these, a specialist, stated that at times her arthritis "flares up and is accompanied by such pain that no activity of any kind is possible. * * * At other times, the swelling and pain are not so great as to make her unable to perform simple tasks. However, she appears at all times to be in some pain and the joints mentioned above [ankle, knee, wrist and finger] are always swollen to some degree. Moreover, her illness has generally weakened her so that she becomes readily fatigued on slight exertion." Her general physician wrote that "the arthritis has reached a significantly crippling stage, marked by pain and fatigue on slight exertion, and by severe restriction in active and passive motion of the diseased joints of the extremities." Both these doctors thought plaintiff ought not work and had so advised her; none of the doctors held out any hope of improvement. Plaintiff's own testimony revealed that she still was going by subway to her Manhattan work bench and could use her hands when there, albeit with some difficulty; her main problem was her inability to get to work when the weather was bad or on the frequent occasions when she did "not feel up to going out, or going down all the steps of the subway and up again." The medical evidence dispels any thought that this fatigue was feigned—indeed, no such suggestion has been made.

In a decision dated August 22, 1960, the Hearing Examiner rejected plaintiff's claim. Believing that "Congress has clearly expressed its intention that the disability provisions of the Act are to be strictly construed," [1] he found that:

"The preponderant weight of the medical [evidence] fails to establish that claimant's arthritic impairment, by itself or together with any other impairment, has reached a stage of sufficient severity to prevent her from engaging in substantial gainful activity which she is qualified to perform, including that of a teacher of languages and jewelry artisan."

There followed a denial of a request for review by the Appeals Council, the bringing of this action under § 205(g) to review the denial of the application, cross-motions for summary judgment, the de-

1. The Examiner quoted S.Rep. No. 1987, 83d Cong., 2d Sess. (1954), pp. 20–21, and H.R.Rep. No. 1189, 84th Cong., 1st Sess. (1955), pp. 5–6.

nial of plaintiff's motion and the grant of defendant's by the District Judge, and this appeal.

The statutory definition, which we quote in the margin,[2] imposes a three-fold requirement: There must be a "medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration"; there must be "inability to engage in any substantial gainful activity"; and the inability must exist "by reason of" the impairment. There is no doubt that the first requirement has here been met; Mrs. Pollak has sustained a "medically determinable physical * * * impairment which can be expected * * * to be of long-continued and indefinite duration."[3] We turn to the two other factors.

In Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir., 1960), decided after the Hearing Examiner's report in this case, we said that determination of an applicant's ability to engage in substantial gainful activity "requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do?" This formulation, which we derived from a number of earlier cases, Aaron v. Fleming, 168 F.Supp. 291, 295 (M.D.Ala.1958) [Rives, C. J.]; Klimaszewski v. Flemming, 176 F.Supp.

927 (E.D.Pa.1959) [Biggs, C. J.]; Teeter v. Flemming, 270 F.2d 871, 77 A.L.R.2d 636 (7 Cir., 1959); Kohrs v. Flemming, 272 F.2d 731 (8 Cir., 1959); Flemming v. Booker, 283 F.2d 321 (5 Cir., 1960), has since been applied in other circuits, Butler v. Flemming, 288 F.2d 591 (5 Cir., 1961); Hall v. Flemming, 289 F.2d 290 (6 Cir., 1961); King v. Flemming, 289 F.2d 808 (6 Cir., 1961); Graham v. Ribicoff, 295 F.2d 391 (9 Cir., 1961).

It seems quite plain that Mrs. Pollak's physical impairment would prevent her from pursuing the role of a companion or housekeeper, her chief activity until 1956, or the part-time office work that had constituted her principal source of income from January 1957 until May 1958—indeed, we do not understand the Government seriously questions this. The Examiner's suggestion that Mrs. Pollak might be able to engage in language teaching fails under the principle, stated in Kerner v. Flemming, that "mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." 283 F.2d at 921; see also the Aaron, Klimaszewski, Teeter, Kohrs and Booker cases cited above, Varnado v. Flemming, 295 F.2d 693 (5 Cir., 1961), and Ribicoff v. Hughes, 295 F.2d 833 (8 Cir., 1961). Mrs. Pollak lacks the academic qualifications and licenses neces-

2. "(2) The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

3. The Government stresses that one of the doctors, in answer to a questionnaire entitled "Musculoskeletal System," estimated only 30% "loss of use" of each arm and only 20% for each leg. We find these percentages of little help in the absence of explanation of what they mean in terms of ability to function; even percentage losses of this magnitude are an impairment and evidence is needed to show what their consequences are. See Curran, Law and Medicine (1960), pp. 312–319. The reporting doctor's attitude is indicated by his answer to questions as to the remaining degrees of motion in the spine and the neck: "This is all nonsensical unnecessary detail." Plaintiff's general physician estimated 75% "disability," whatever that may mean.

The Government also makes some point that plaintiff's impairment does not approach the seriousness of those listed in the Regulations, 20 C.F.R. § 404.1501 (e). But, as paragraph (d) makes clear, the conditions listed in (e) are simply "Examples of some impairments which would ordinarily be considered as preventing substantial gainful activity," and "Conditions which fall short of the levels of severity indicated must also be evaluated in terms of whether they do in fact prevent the individual from engaging in any substantial gainful activity."

sary for teaching in a school, even if her health would permit her to do this on a part-time basis, which is doubtful. The only teaching possibility that was in any way open would be giving private lessons in English to German-speaking persons willing to come to her room in Flushing when she was physically able to teach them; there was no evidence that any such possibility was more than theoretical. Although the Examiner referred generally to "other light sedentary work," the record contains no suggestion what this might be; the case thus differs from Graham v. Ribicoff, supra, where the Appeals Council had taken notice of government studies showing that many types of jobs were filled by persons having the same disability suffered by applicant.[4]

■ Mrs. Pollak's ability to pursue the jewelry craft requires more consideration. If her earnings from that, $462 in 1958 and $531 in 1959, were the maximum achievable, her capacity to continue this work would not constitute ability to engage in "any substantial gainful activity" under the Department's own presumptive standards, see Flemming v. Booker, 283 F.2d at 324; Hearings before the Subcommittee on the Administration of the Social Security Laws of the Committee of the House of Representatives on Ways and Means, 86th Cong., 1st Sess. (1959), testimony of Arthur E. Hess, Assistant Director in Charge of Division of Disability Operations, pp. 925–931. The Examiner's findings with respect to her ability to earn more lack adequate basis. He states "It is not established that her failure to devote more time to her business than she does is due to ill health"; we fail to find evidence to support this which suffices under the govern-

ing rules, 42 U.S.C.A. § 405(g); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). On the remand we are directing, the evidence may establish that Mrs. Pollak could go to her work bench more often or could work at home, and, by one means or other, raise her earnings to a substantial gainful level; but the present record affords no basis for such a finding. Perhaps the reason the Examiner did not pursue this point further was his belief that even if Mrs. Pollak could not earn more from her jewelry craft, she still did not qualify because of other opportunities he thought available; we have held there was no basis for such a view.

The Government argues that Mrs. Pollak is not entitled to disability benefits in any event because, however little she can now earn, this is all she ever did— in other words that even if she has shown "inability to engage in any substantial gainful activity" and a "medically determinable physical * * * impairment" etc., the former did not occur "by reason of" the latter, as the statute demands. If the premise were established, the conclusion might well follow. However, Mrs. Pollak had not been engaged solely in jewelry work; this had been simply a side-line to her activity, first as a companion earning her room and board, and then as a part-time office worker. When her physical impairment prevented her pursuing these or other callings for which she was fitted, she qualified under the statute unless she remained capable of expanding the jewelry craft into substantial gainful activity. Since the Examiner's finding with respect to the latter issue is defective, we reverse the grant of summary judgment, with instructions to remand to the Secretary

4. The two decisions in this Circuit relied on by the Government do not support its position. The papers on appeal in Ussi v. Folsom, 157 F.Supp. 679 (N.D.N.Y. 1957), aff'd, 254 F.2d 842 (2 Cir. 1958), show that plaintiff's only ailment was a chronic lumbo-sacral strain, possibly with a disc involvement, which caused some limitation of leg motion; the medical proscription was simply against heavy work, and at the time of the hearing, plaintiff was earning some $30 a week as a tailor although there was no evidence that his physical condition differed from that during the period for which he sought a disability freeze. Adams v. Flemming, 276 F.2d 901 (2 Cir. 1960), is plainly distinguishable on grounds apparent on the face of the opinion.

so that the latter may promptly take further evidence and make findings with respect to plaintiff's ability to expand her jewelry activity to a substantially gainful level, a course similar to that pursued in Kerner v. Flemming, 283 F.2d at 921–922; unless the Secretary determines that plaintiff was able to do this, her application should be granted.

So ordered.