**Richard KARAS**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.**

**Civ. A. No. 32710.**

United States District Court
E. D. Pennsylvania.

Nov. 14, 1963.

Joseph A. Zane, Schuylkill Haven, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., by Merna B. Marshall, Asst. U. S. Atty., for defendant.

WOOD, District Judge.

This is an action [1] to review the final decision of the Secretary of Health, Education, and Welfare (Secretary) who denied the plaintiff's application for disability insurance benefits.

The plaintiff filed an application for disability insurance benefits on November 23, 1960, alleging that he became unable to work in August, 1960, at age 43, because of a fractured spine. The initial application was denied and reconsideration affirmed this denial.

A hearing was requested and on May 16, 1962 the hearing examiner considered the case de novo on the basis of the testimony, medical evidence and documents. After the hearing the examiner caused additional consultative examinations to be performed in order to clarify the nature and severity of the plaintiff's impairments.

On August 31, 1962, the hearing examiner found that the plaintiff was not under a disability. The hearing examiner's decision became the final decision of the Secretary when the Appeals Council, after receiving a current medical report by plaintiff's personal physician (October 24, 1962) which was made part of the record, denied the plaintiff's request for review on November 27, 1962.

The facts found by the examiner showed that the plaintiff stopped work at the age of 43 as a result of a back injury sustained in an industrial accident on August 25, 1960, when a drill fell and struck his back. He was hospitalized for three days and discharged. The admitting physician made a preliminary diagnosis of a fractured sacrum. There is no indication that clinical and laboratory diagnostic procedures confirmed that initial impression.

The plaintiff has a seventh or eighth grade education and from 1947 to 1960 he was employed on heavy equipment as a driller and operator. Prior to 1947 he was self employed as a truck driver hauling coal. At the time of the accident he was employed as a driller operating an air drill for a construction company engaged in road construction.

From the time of his injury the plaintiff has claimed that he has had a constant pain in his back and was unable to resume work. Also, he has complained of pain in his hands, wrists and legs which he attributes to the accident. Some swelling was noted in his hand by the examiner which the plaintiff claimed to be arthritis. Based on his own observation the examiner initiated further medical studies to determine the nature of this alleged arthritic condition.

The medical evidence shows that the plaintiff has been under treatment continuously for two years following the accident and has been studied at six hospitals.

All of the doctors who have examined the plaintiff, except the admitting doctor at the time of his injury, have concluded that the plaintiff did not suffer a spinal

1. 42 U.S.C.A. § 405(g).

fracture or dislocation. A myelogram did not reveal indications of a herniated intervertebral disc. Dr. Stein, an orthopedist, diagnosed plaintiff's condition as a herniated fat pad (a fatty nodule or tumor in the posterior back area) and believed that the fatty nodule is the cause of the plaintiff's pain. Dr. Stein rejected the evaluation made by other physicians that the plaintiff's pain arises out of a psychosomatic situation. He recommended surgery which is of a minor nature, requiring hospitalization for only a day or two with the prognosis that the plaintiff will be "rendered asymptomatic and *able to return to work.*" The described operation was performed in October 1962. The latest report of record shows that optimum improvement in the plaintiff's condition is expected within one month.

On July 12, 1962, when the plaintiff was given a comprehensive examination at the Geisinger Medical Center no objective evidence showed that he had any significant systemic problem. At the time of the examination, there was no marked tenderness in the joints nor were there symptoms present indicative of rheumatoid arthritis. The examining physician expressed doubt that the plaintiff was suffering from rheumatoid arthritis and stated that if severe joint swelling does occur further studies should be made. Dr. Pytko, the examining physician, stated: "His hands are somewhat pudgy, and this precludes, I think, adequate evaluation of swelling." (Tr. 107) This statement clarifies somewhat the hearing examiner's observation that the plaintiff's hand appeared to be swollen (Tr. 55). In this connection it is significant that an X-ray examination of the right hand in February 1961, and a subsequent X-ray examination of both hands and wrists on July 12, 1962, showed no abnormality (Tr. 89, 109).

Psychiatric examinations of the plaintiff at Government expense did not reveal the presence of any significant mental disorder. Dr. Gatski found only a mild anxiety with mild irritability (Tr. 102–104). Dr. Angus in a prior examination found only mild irritability and faint paranoid suggestions and a defective memory. However, he made a conclusion that the plaintiff was totally incapacitated because of an anxiety neurosis. This neurosis he attributes to the instant litigation being unresolved. He also recommended appropriate medical treatment to *encourage a return to work.* (Tr. 92, 93)

Two other doctors, Monahan and Tomlin, examined the plaintiff and reported that he was restricted in his ability to stand, bend or walk. Dr. Monahan found the plaintiff to be suffering from traumatic arthritis, spondyletes, arthritis of both wrists and sciatica. Dr. Tomlin found the plaintiff to be totally disabled due to arthritis of the psomatic type.

Doctor J. J. Canfield, a general practitioner, who examined the plaintiff on July 18, 1961, found an anxiety reaction and *that he should return to work.* (Tr. 90) Dr. Canfield found that the plaintiff could bend well and that he presents no positive clinical or X-ray findings to substantiate his complaints of a severe back pain (Tr. 90).

This conflicting medical testimony was resolved by the examiner who found:

"It is realized that the claimant complains of pain. Pain is a subjective complaint and can not be measured objectively. There is shown in the medical evidence only one condition to account for it, i. e., Dr. Stein's finding of a herniated fat pad. All other objective evidence is negative and it was Dr. Stein's opinion that minor surgery would cure the condition." (Tr. 17)

The examiner's findings are strongly supported by substantial evidence and we cannot substitute our opinion for his well considered deliberation.

" \* \* \* 'The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination wheth-

er that impairment results in an inability to engage in any substantial gainful activity'." Hodgson v. Celebrezze, 312 F.2d 260, 263 (3 Cir. 1963); see also Farley v. Celebrezze, 315 F.2d 704 (3 Cir. 1963); Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa.1959).

The findings of Dr. Tomlin and Dr. Monahan were not supported by objective clinical data and testing as required by Social Security Administration Regulations 20 C.F.R. 404.1524 which sets the standard of medical evidence required to support the plaintiff's burden of proof.

With respect to the second aspect of the test for disability, the examiner found:

"* * * that the claimant has not established that he has impairments, either singularly or in combination, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application of November 23, 1960 was effective." (Tr. 19)

■ The claimant in order to sustain his burden of proof under the Act need not establish a complete absence of any opportunity for substantial gainful employment. Hodgson v. Celebrezze, supra. This duty is to be judged in a "practical way." Butler v. Flemming, 288 F.2d 591, 595 (5 Cir. 1961).

In evaluating his physical abilities the examiner found:

"* * * In the light of the divergent opinions set forth above, we must realize that the medical evidence shows no atrophy, no muscle wasting, no muscle tenderness and 'no marked limitation of motion.' He is ambulatory. His manual dexterity is evidenced by his ability to 'robe and disrobe without any particular difficulty' (Exhibit 14). He can bend his back forward to 90 degrees, and laterally to approximately 30 degrees in either direction (Exhibit 14) and Dr. Canfield found that claimant could flex forward and touch his toes (Exhibit 10)." (Tr. 17)

The examiner concluded that the plaintiff can walk, flex his back to 90 degrees, hyperextend 30 degrees, and handle objects with no marked limitation of motion (Tr. 15).

The plaintiff claims that the pain is so severe that it prevents him from engaging in any substantial gainful activity. However, as already stated two physicians, Drs. Canfield and Angus, recommended that he return to work. The plaintiff has made no attempt to return to his former occupation or to secure other employment. He must at least demonstrate that he is unable to do his former work. "The difficulty we find with his position is that the objective medical evidence does not confirm his testimony of subjective ailments." Dupkunis v. Celebrezze, 3 Cir., 323 F.2d 380.

■ The claimant has not sustained his burden of proof in establishing that no substantial gainful activity is open to him.

While the Secretary also relied on industrial and governmental studies to show many types of jobs open to the plaintiff, such studies have been rejected by our Court of Appeals[2] although approved of by another Circuit.[3]

Apart from this evidence, however, there exists substantial support in the record for the Secretary's finding that the plaintiff has not sustained his burden of proof in establishing his inability to work.

ORDER

AND NOW, this 14th day of November, 1963, IT IS ORDERED that the defendant's motion for summary judgment is GRANTED and the plaintiff's motion for summary judgment is DENIED.

2. Stancavage v. Celebrezze, 3 Cir., 323 F. 2d 373.

3. Pollack v. Ribicoff, 300 F.2d 674 (2 Cir. 1962).