Mae C. BROWN, Plaintiff.

v.

Honorable Anthony CELEBREZZE, Secretary of Health, Education, and Welfare of the United States of America, Defendant.

Civ. A. No. 4160.

United States District Court
W. D. South Carolina,
Greenville Division.

Oct. 3, 1964.

R. W. Riley, Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., Ernest J. Howard, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, District Judge.

This is an action asking the District Court to review a final decision of the

Secretary of Health, Education and Welfare, in accordance with 205(g) of the Social Security Act (42 U.S.C.A. § 405 (g)). The decision of the Secretary denied the plaintiff the period of disability and disability insurance benefits for which she applied.

The plaintiff met the special earnings requirements during the effective period of the application, and continued to meet such requirements through March 31, 1954. On the basis of her application filed on October 4, 1960, the evidence must establish that the plaintiff was under a disability, as defined in the Act beginning on or before March 31, 1954, for entitlement to disability insurance benefits or the establishment of a period of disability.

The question before this Court is whether or not the record reveals substantial evidence to sustain the decision of the Secretary.

██ Findings of fact by the Secretary, if supported by substantial evidence, are conclusive. 42 U.S.C.A. § 405 (g). Neither the district court, nor an appellate court, has the right to make its own appraisal of the evidence. Carqueville v. Flemming, 7 Cir., 1959, 263 F.2d 875. Furthermore, the finality accorded by 42 U.S.C.A. § 405(g) to the administrative findings extends to the inferences from the evidence made by the Secretary, and the district court is precluded from substituting contrary inferences from the findings of fact. Carqueville v. Flemming, supra; Walker v. Altmeyer, 2 Cir., 1943, 137 F.2d 531. These mandates are well established. This decision in no way attempts to substitute contrary findings of fact or inferences drawn therefrom. I am of the opinion, however, that the findings are not supported by substantial evidence sufficient to make a determination that plaintiff is not entitled to disability benefits.

██ "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L. Ed. 126 (1938).

In 1932, at the age of sixteen, plaintiff was involved in a serious automobile accident in which she received extensive injuries including a compound fracture of the right femur, a fracture of her right knee cap and dislocation of the left hip. She also sustained a concussion of the brain which resulted in her being unconscious for two weeks. During hospitalization she developed pneumonia as well as osteomyelitis of the right femur. The bone had to be scraped and this resulted in the right leg permanently being approximately two inches shorter than the left. She was incapacitated for about a year but after she recovered she got along well until 1948, when her left hip started hurting and she was in constant pain. This hip condition became progressively more severe and on April 24, 1951, a cup arthroplasty was done at Walter Reed Hospital. She was released from Walter Reed after the hip operation on July 11, 1951.

In 1948, plaintiff had an operation on her right eye to correct retinal detachment. In 1949, she had abdominal surgery for tumor of the uterus with incidental appendectomy. In April, 1951, she had cup arthroplasty performed on left hip heretofore referred to. In December, 1951, she had a second operation on her right eye. In 1952, she had a third operation on her right eye. In 1953, she had operative examination revealing negative pelvis, same being corrected by a D and C and cervical biopsy. In 1956, under general anesthesia, she had a fourth major operation on her right eye which was unsuccessful. In 1960, she had repair to pelvis broken in three places as result of fall.

Plaintiff has lost all vision in her right eye and her "left eye 20/25 corrected to 20/20 J–1".

The first x-ray which was taken after plaintiff's hip operation in April, 1951, was on August, 1951, and it revealed that an arthritic reaction was taking place in the cup-shaped hollow on the side of the

hip which receives the head of the thigh bone, or femur, forming the ball and socket joint of the hip, the cup-shaped hollow being known as the acetabulum. The findings in December, 1951, relative to the left hip are as follows: "Studies of the left hip shows the presence of a tantalum cap over the neck of the femur. It appears to be lying satisfactorily in the acetabulum. There is, however, some sclerosis of the acetabulum suggestive of arthritic change." The x-ray examination on April 4, 1952, states, "Examination of the pelvis reveals a cup arthroplasty for the head and neck of the left femur. The cup appears to be in normal relation to the acetabulum and the neck of the femur. Some sclerosis is seen at the upper weight bearing margin of the acetabulum, presumably due to trauma. Some of the calcification is seen in the soft tissues at the inferior margin of the cup. A bone fragment is seen in the soft tissue superolaterally to the acetabulum."

As to plaintiff's difficulty with her right knee, the x-ray finding on September, 1951, shows, "Examination of the right knee in multiple projections reveals a minimal narrowing of the joint space with a subarticular osteoporosis. The posterior aspect of the patella is somewhat roughened and all bones visualized are slightly osteoporotic. A definite loose body is not visualized but the presence of one such body is suggested in the lateral projection. * * * "

The x-ray findings in regard to the right knee in 1954, and in 1956, indicate "a partially detached fragment of bone" within the knee, in addition to the constant findings of generalized osteoporosis since and before 1951.

Dr. Theodore R. Waugh in a narrative medical history of the plaintiff dated June 18, 1957, says: " * * * When I first saw this patient in October 1956 she had severe pain in her right knee and left hip with a moderate degree of pain in her left knee. The right leg is approximately 2 inches shorter than the left. There is marked crepitus associated with movement of both knees; although there is a fairly good range of motion and relatively little instability. The patient walks with a limp and considerable pain. The scars on the anterior aspect of her right thigh are well healed and without evidence of infection. The amount of vision that this patient has with her right eye is of definitely minimal degree.

"It would seem that this patient's degree of disability is of such a nature that it is almost impossible for her to perform alone the necessary household activities. Furthermore, it is anticipated that her osteoarthritis is progressive and dependent upon the alteration in the dynamics of her lower extremity. It is possible that at some future date it may be necessary for her to have the cup arthroplasty removed and a left hip fusion performed. Unfortunately, while this will decrease the amount of pain and difficulty she has with her left hip, it will throw a greater degree of strain on both her knees, sacroiliac and lower lumber joints. It might, therefore, be further anticipated that her osteoarthritis related to these other joints would be worsened, and it would be impossible for her to compensate for the lack of motion in a fused left hip."

Dr. Edwin H. Martinat in a letter to the Social Security Administration dated May 30, 1961, states: " * * * She has a good bit of sclerosis about the acetabulum, and it would be my feeling that she is having some pain in this hip. The patient also has an unstable, weak, arthritic knee on the right which is giving her a good bit of difficulty. She is now in a long leg brace. More surgery is contemplated at Walter Reed if she does not improve using the brace."

The record discloses that the plaintiff was born in 1915. She finished the ninth grade in school when she was sixteen years old. She was in a serious automobile accident either in 1931, or 1932, and received extensive injuries from which she eventually recovered. She mended books in the school library when she was a teenager; she demonstrated cosmetics in drug stores in 1935, and

1936; she worked at various textile mills in different capacities, as spinner, filling batteries, inspecting cloth and turning bibs; she worked as a waitress; she has done some sales work in five and ten cent stores; she last worked in 1950, at a plant stuffing and sewing pillows. She was married in 1942, to Eugene W. Brown who was in the Air Force. He is now retired. Whenever possible she went with her husband on his different assignments and consequently has lived in many different places and has held various types of jobs.

Mrs. Brown says that she is in constant pain; that her right knee wobbles and causes her to fall; that her left hip "catches" and does not work; that she has to use a cane to get about; that she is nervous; that she takes lots of medicine for pain on prescription as well as a lot of aspirin. She said that the doctors told her that she would have to learn to live with pain because she could not possibly get any better. She cannot perform any household activities alone. The doctor told her in 1947, that she needed someone with her all of the time. She had outside help until her husband retired and he now helps her. Before her husband retired, in addition to the outside help, her family and friends helped her with the grocery shopping and anything that she needed to have done. She has not lived in a house since 1950, because she has not been able to take care of it. She and her husband live in a trailer. She lived with her sister in 1953, and 1954, while her husband was away, because she was not physically able to be left alone. She was on crutches most of this time.

Mrs. Brown's husband, her sister, her sister-in-law, a first cousin and a neighbor corroborated the testimony of the plaintiff with reference to the pain she suffers, her physical condition and her inability to take care of her household duties.

The statute, 42 U.S.C.A. § 416 (i), defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically deter-minable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." While it casts upon the claimant the burden of proving that such a disability exists, it is not expected that this burden shall be carried to a point beyond a reasonable doubt. Ollis v. Ribicoff, 208 F.Supp. 644 (W.D.N.C. 1962). There really are two steps to a finding of disability: first, a finding of a "medically determinable physical or mental impairment, which can be expected to result in death or to be of long-continued and indefinite duration" and, second, a finding that the impairment in fact causes an inability to "engage in any substantial gainful activity * * * ?" Butler v. Flemming, 5 Cir., 1961, 288 F. 2d 591, 593.

Plaintiff's osteoarthritis, loss of vision in the right eye and other impairments are certainly medically determinable and can be expected to be of long-continued and indefinite duration and cannot in the foreseeable future be so diminished as no longer to prevent substantial activity. In addition to these medical determinable physical defects there is the problem of constant instability while moving about, female disorders and resulting emotional disturbances and mental anxiety and the constant pain that plaintiff suffers, and, as stated by Dr. Waugh, Mrs. Brown's hip and knee conditions tend to work against each other.

The Examiner finds that "The claimant has no impairment in her hands, her arms or upper extremities. Even though she has to use a cane with which to get about, there is no apparent reason why the claimant with a high school education could not have engaged in some form of substantial gainful activity."

Such conclusion is conjectural and speculative under the test laid down in Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916, 921, reaffirmed in Pollak v. Ribicoff, 2 Cir., 1962, 300 F.2d 674, and adopted by the ninth circuit in Graham v. Ribicoff, 9 Cir., 1961, 295 F.2d 391, 394. The rule formulated in the Kerner

case is that the determination of an applicant's ability to engage in substantial gainful activity "requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do." Kerner v. Flemming, supra, 283 F.2d at 921; Graham v. Ribicoff, supra, 295 F.2d at 394. The Examiner's finding that plaintiff could engage in some form of substantial gainful activity is without factual support in the record and thus violates the above rule, i. e., there is no "substantial evidence" in the record to support the Secretary's findings that Mrs. Brown is able to engage in some form of substantial gainful activity. "Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." Kerner v. Flemming, supra, 283 F.2d at 921. The record contains no evidence of just what opportunities are available to a woman of plaintiff's background and experience and in her mental and physical condition.

As stated in 20 C.F.R., Sec. 404.1511 (a), where there are impairments involving the musculoskeletal system, the medical factor of severe pain may be taken into consideration in order to determine the extent of the impairment. The fact that there is such a subjective symptom as pain does not mean that it ranks as a lesser type of disability. In the case of Lewis v. Flemming, 176 F.Supp. 872, on page 876 (E.D.Ark.1959) Judge Henley states: "There is nothing in the statute or the legislative history which indicates a Congressional intent to exclude disability caused by pain, as contrasted to other types of disability, such as disability resulting from loss of limbs or sight or from mechanical disfunction of the limbs, joints, or other organs of the body. As a matter of fact, common experience and observation teach that in many cases of disability pain in one form or another is the chief and immediate disabling agent. An individual's body may be mechanically capable of use and function, but the pain resulting therefrom may be so great as to preclude them. Indeed, the nervous system in an effort to avoid agonizing pain may in effect impose immobility and inactivity upon the person affected; and in such a case the disability is no less real than it would be if the patient had lost the mechanical use of his body." See also, Blanscet v. Ribicoff, 201 F.Supp. 257 (W. D.Ark., 1962).

Dr. Waugh states that "She was re-operated on for retinal detachment in 1951 and January 1952. Since that time the patient has repeatedly required medical attention with repeated injections of hydrocortone into her knees which have rather extensive degree of osteoarthritis." Dr. James Miller in April, 1956, says, " * * * Motion is not painful but she does have chondromalicia. X-rays revealed osteoarthritic changes throughout the entire joint. The patient's knee was aspirated, no fluid was removed but ½ cc. of hydrocortone was put in place." And plaintiff testified "My knee's not stable, and my hip—I'm never free of pain. I'm nervous and—you know—a lot of pain makes you—if you have constant pain, naturally you're going to be nervous."

The possibilities of Mrs. Brown obtaining employment are practically nil. It is unrealistic to think that an employer concerned with substantial capacity, psychological stability, and steady attendance, would hire anyone with the impairments of this claimant. See, Thomas v. Celebrezze, 4 Cir., 1964, 331 F.2d 541.

After a careful examination of the record in this case and the foregoing authorities, I am of the opinion that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. On the contrary, the conclusion that plaintiff is unable to engage in any substantial gainful activity appears self-evident to me. Plaintiff in this case is the victim of medically determinable impairments of serious and substantial proportions which can only be expected to be of long and indefinite duration. As a direct result of these impairments plaintiff has been unable since July 11, 1951, to follow her employment

for which she was suited. Plaintiff's physical impairments, when considered in connection with her individual circumstances of age, work experience, education, training and skill, serve to eliminate effectively, any reasonable possibility of suitable employment or employment for which plaintiff is qualified.

Under the foregoing authorities, I must conclude that the findings of the Hearing Examiner as to the establishment of a period of disability and disability insurance benefits are not supported by substantial evidence on the record considered as a whole and under the authority for appeal given by 42 U.S.C.A. § 405(g) the conclusion of the Secretary that the plaintiff was not entitled to the period of disability and the disability insurance benefits was clearly erroneous, was incorrect, and must, therefore, be reversed.

It is, therefore, ordered, that the decision of the Secretary in this case be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.