**Robert P. COX**

v.

**SECRETARY OF DEPARTMENT OF HEALTH AND HUMAN SERVICES.**

**Civ. A. No. 79–3392.**

United States District Court,
E. D. Pennsylvania.

Sept. 9, 1981.

Joseph F. Mulcahy, Jr., Chester, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Dawn M. MacPhee, Asst. U. S. Atty., Stephanie W. Naidoff, Regional Atty., Dept. of Health & Human Resources, Fred J. Marinucci, Asst. Regional Atty., Dept. of Health & Human Resources, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), seeking review of a final decision of the Secretary of Health and Human Services denying disability benefits to the plaintiff, Robert P. Cox. The action is before us on cross-motions for summary judgment and, alternatively, on plaintiff's motion to remand to the Administrative Law Judge ("ALJ") for further findings.

Cox is afflicted with amytrophic lateral sclerosis, an ailment best known as "Lou Gehrig's disease" because it is the illness that prematurely ended the career of that baseball immortal. The disease afflicts the central nervous system and is characterized by a hardening of the lateral columns of the spinal cord with muscular atrophy. It may also invade the oblongata and affect the ventral columns. Cox's application, filed November 10, 1977, sought benefits from October 1976, the date of the onset of the active phase of the disease.

Cox was not represented by counsel at the March 2, 1979, hearing before the ALJ, following which the ALJ found that Cox was engaged in substantial gainful activity and was therefore not disabled within the constraints of the statutory scheme regulating disability insurance benefits, sections 223 and 216(i) of the Social Security Act, 42 U.S.C. §§ 423, 416(i).[1] At the hearing before us, Cox was represented by counsel who argued forcefully that numerous facts or factual areas had not been sufficiently developed in the record before the ALJ, and

that, had they been more fully developed, the ALJ's decision would have been favorable to the claimant. That argument forms the basis for plaintiff's motion for remand, which we take up together with the cross-motions for summary judgment.

Prior to contracting the disease, Cox was a self-employed manufacturer's representative, dealing in desks and other school equipment, primarily for newly constructed schools. After being awarded a contract, usually following a bidding process, Cox faced a delay of as long as three years before he had to deliver on the contract, for his duty to perform arose only upon completion of the construction of the school for which the equipment was purchased. Cox's sales commission was not due from the manufacturer until he had performed on the contract. Moreover, because he kept his books on a cash rather than an accrual basis, income received on contracts was not reportable until the taxable year in which the payment was received, regardless of when the contract was awarded or performance completed.

At the hearing before the ALJ, Cox offered no medical evidence pertaining to his physical condition, and as a result, the medical record in the case is virtually nil. The ALJ accepted Cox's representations concerning the nature of his condition, but did not seek to develop the medical record in terms of Cox's ability to work during the critical time periods before him. Rather, the ALJ concentrated upon Cox's tax returns and upon the written work activity statements covering the period until December 1977 which Cox had forwarded to the Social Security Administration. As will be seen—and the point is important—the ALJ did not consider Cox's testimony as to work activity after January 1, 1978.[2]

The tax returns showed that Cox earned $5,500 in 1977, but Cox testified that the earnings reported on his 1977 return represented commissions on sales made one or

1. The ALJ's findings and conclusions became the final decision of the Secretary on July 13, 1979, when the Appeals Council affirmed the ALJ's decision.

2. The record is uncontradicted that the plaintiff met the social security special earnings requirement through at least December 31, 1980.

more years earlier because of the time lapse between the actual contract date and the payment date. He further testified that his activity consisted essentially of making follow up calls on previous sales to effect collections.

 The record also contained, however, a work activity report signed by Cox stating that he had been working as many as twenty hours per week until December 1977. Whatever Cox's physical condition may have been during 1976 and 1977, that work activity report gives us no alternative but to find that the ALJ's conclusion that Cox was able to engage in substantial gainful employment is supported by substantial evidence as it concerns the period before January 1, 1978. Accordingly, we must first consider whether we may divide the benefit claims period before the ALJ for purposes of review. We find, under the applicable regulations, that we can.

Under 20 C.F.R. § 404.316(a):

[Claimants] are entitled to disability benefits beginning with the first month covered by [a claimant's] application in which [the claimant] meet[s] all the other requirements for entitlement. . . .

A period of disability begins on the day the claimant's disability begins if the claimant is insured for disability on that day, 20 C.F.R. § 404.321. As we read these regulations, under § 404.316 the ALJ's focus may not be limited to the date of the application or the initial claimed disability, for later onset of disability may be the basis for entitlement. In determining the claimant's eligibility for disability benefits, the ALJ has to make findings as to the date on which the claimant's physical condition had deteriorated to the extent that he was entitled to disability benefits. Thus, the record in cases of this kind should be scrutinized to assure that the Secretary and the ALJ did not view the record as an "all or nothing" proposition, but rather considered the possi-

bility of an interim date on which disability might have commenced.

Given our conclusion that substantial evidence supports the ALJ's conclusion that Cox was able to engage in substantial gainful employment until January 1, 1978, we must grant the Secretary's motion for that time period. We turn then to the remaining time period before the ALJ—that commencing on January 1, 1978, and continuing until the hearing before him on March 2, 1979.

The evidence showed that Cox earned commissions of $1700 in 1978. The 1978 tax return for Edward Cox and Co., Inc. showed gross receipts of $29,083 and a net loss of $4,200. Listed as expenses for tax year 1978 were nearly $2,000 for office expenses, $831 for telephone expenses, $1,000 for auto expenses, and $2,840 for salary expenses. The salary item appears to be the total paid the claimant ($1,700) and his wife ($1,140) for their services that year.[3]

Cox did not recall the date of the sale which formed the basis for his 1978 commissions. He insisted that the commissions he received in 1978 were not for work performed or business procured that year.[4] Moreover, he testified that after the beginning of 1978, he spent less than one hour daily on the business; most days, in fact, he spent no time on the business. He further testified that after that time his condition was deteriorating to the point that he could do practically nothing—he could not even perform his physical therapy. This was still the situation at the time of the ALJ's hearing:

[Mr. Cox] I traveled. In my basic business, I was a salesman and I traveled three states. I concentrated on half of Pennsylvania, not the whole state, New Jersey and Delaware, northern Delaware. I would be out overnight from time to time, maybe part of the week, good part of the week or the whole week. That to

---

3. Cox testified that the corporation was transferred to his son in January 1978 in the hope that the son would continue the business because he was unable to continue it himself. However, he explained that his son showed little interest in the business, and concentrated

instead efforts on his own painting and contracting business.

4. Cox even testified that he was still expecting a commission on a sale that he made about a year or so previously.

me was gainful employment. Now my gainful employment in the last three years, as far as I'm concerned, is getting on the phone once in awhile and trying to collect old accounts or follow up to find out why I hadn't gotten my money.... (T.R. 30–31).

[I]f I walk out there at the corner and try to find the men's room and have to walk any distance, I'm completely exhausted, I can't sit here too long because my muscles tighten up and then when I go to get up, I can't move, and I can't move too long. So, I mean, I just, you know, there's a little bit of ... (T.R. 33).

[ALJ] What's your figure like, your time in 1978?

[Mr. Cox] Practically nothing. It was just, I'm deteriorating to the point where I can't even do my physical therapy anymore because if I do my physical therapy, I've got to go back to bed for a couple more hours to recuperate before I get up. (T.R. 40).

Although this testimony about Cox's physical condition was uncontradicted, as was the testimony about the timing of his receipt of income, the ALJ concluded that the evidence presented was to the contrary and failed to establish that Cox did not engage in substantial gainful activity:

Although Mr. Cox alleges that he performed hardly any work on his business in 1978, his tax return shows the contrary to be true. Gross receipts from the business during the tax year 1978 revealed sales exceeding $29,000 even though he only reported a small salary and a net business loss. If the claimant's son was not successful in the business and was not even active in it, then those funds must be attributable to the claimant's efforts. Although the claimant stated that he hasn't been active in the business for the past year, the conflicting testimony and tax returns point to a contrary conclusion ... [W]hile the claimant's 1977 earnings alone show his ability to engage in work activity and his 1978 earnings alone may not show the same, the undersigned believes the totality of the evidence shows that the claimant spends significant amounts of time on his business, that he is the only person contributing to its operation, and that, despite the fact that the amount of time and the quality thereof he devotes to his business may be less than he did before he became ill, nevertheless, the undersigned believes that he has demonstrated his ability to perform significant work activities which would tend to disprove that he is disabled.

... In the absence of a showing that the claimant's impairments are so severe that he is prevented thereby from performing all substantial gainful activity, the undersigned is required to find that the claimant's work activity precludes his entitlement to disability insurance benefits.

(Tr. 10). This passage makes it clear that, contrary to the obligation imposed by the regulations, *see* p. 1298, *supra*, the ALJ viewed the record as an "all or nothing" proposition, and that the ALJ failed to grasp the relationship between Cox's generation of business and the report of income and to differentiate among the time periods, i. e., before and after January 1, 1978, when Cox's ability to engage in substantial gainful activity varied.

For the Secretary to prevail there must be "substantial evidence" that the claimant was not able to engage (for the relevant period) in any substantial gainful activity. *Woods v. Finch,* 428 F.2d 469 (3d Cir. 1970). Judge Pollak analyzed the issue well in *Patane v. Harris,* 507 F.Supp. 115, 117 (E.D.Pa.1981):

The regulations as written and the case law construing these regulations define "substantial gainful activity" as consisting of two distinct, albeit interrelated, components: compensation *and* the substantiality of the activity itself. 20 C.F.R. § 404.1532(b); *Chicager v. Califano,* 574 F.2d 161 (3d Cir. 1978). As Justice (then Judge) Stevens has suggested, "the question [of disability] is not simply answered by the fact of employment or the extent of [the Claimant's] earnings." *Stark v. Weinberger,* 497 F.2d 1092, 1100 (7th Cir. 1974). See also *Morrone v. Secretary of HEW,* 372 F.Supp. 794, 801 (E.D.Pa.1974).

It is undisputed that Cox is and has been suffering from a disease of the gravest and most debilitating character since before January 1978. According to his uncontradicted testimony, Cox had a serious regression in January 1978, after which he could not work.[5] There is no evidence that he engaged in any significant business activity in either a physical or pecuniary sense in 1978. Given his uncontradicted testimony concerning the time lag in payments to his corporation, the fact that the 1978 income tax returns showed gross receipts of $29,083 and net earnings of $1700 is meaningless.

■ The ALJ's conclusions to the contrary are unsupported. The work activity reports, which were dispositive in the earlier time frame, do not shed light on the post-1977 period. In their absence, no inference as to the existence of substantial gainful activity can be drawn on the basis of the income tax returns alone. The short of it, in terms of the standards enunciated by Judge Pollak, is that there is no evidence that Cox's 1978 and subsequent activity was in any way substantial or that his earnings were substantial. Thus, neither of the joint requisites for establishing substantial gainful activity are met. Under these circumstances, we must declare that the ALJ's findings are not supported by substantial evidence; hence the government's motion for summary judgment must be denied with respect to the post-January 1, 1978 period.

We are strongly tempted to grant plaintiff's motion so as to require the payment of benefits for the post-January 1, 1978 period without the taking of further evidence. However, in support of his motion for remand, Cox argued at the hearing before us that in determining his ability or inability to engage in "substantial gainful activity," the ALJ failed to develop the record sufficiently in the areas of: (1) Cox's financial records (to ascertain when the activities which generated income were performed); (2) Cox's actual work and physical activity from 1978 forward; and (3) Cox's actual medical condition during the period.

Had the ALJ done so, Cox submits, he would have prevailed. While we are inclined to agree, we must concede that: (1) the record would benefit from further evidence in these areas; and (2) in view of Cox's 1978 income tax returns, the Secretary might well demand medical evidence and more detailed financial information to justify an award for the post-January 1978 period.

■ The remand provisions of the Social Security Disability Act as amended in 1980 provide:

... The court may ... remand the case to the Secretary, ... but only upon a showing that there is new evidence and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ....

42 U.S.C.A. § 405(g). Although the amendment modified the "good cause shown" provision, the modification was not made for the purpose of limiting "judicial remands currently recognized under the law in cases which [sic] the Secretary has failed to provide a full and fair hearing, to make explicit findings, or to have correctly apply [sic] the law and regulations." See H.R.Conf. Rep.No. 100, 96th Cong., 2d Sess. at 13. Rather, the intent of the Senate was to discourage judges from remanding the findings of the Secretary merely because the individual judge happened to disagree with the outcome of the case, which he might otherwise have to sustain under the substantial evidence rule. See S.R. No. 408, 96th Cong. 2d Sess., 58, U.S.Code Cong. & Admin.News 1980, p. 1277.

■ Remand of this case would not run afoul of the language of the statute or of the express intent of Congress. This is a case in which the Secretary failed to provide a full and fair hearing or to correctly apply the law and regulations. Moreover, there is new evidence to be adduced which will lead to a more accurate result. Under these circumstances, we find that there is good cause for remand.

---

5. Even in 1977, before the regression, his activity was limited primarily to making follow-up phone calls.

In view of the foregoing discussion, we will grant summary judgment for the Secretary with respect to the pre-January 1, 1978 period, and will remand this matter to the Secretary with the direction that the ALJ take additional testimony with respect to the post-January 1, 1978 period and adjudicate Cox's claims for that period.[6]

6. Based upon representations made at our hearing, we assume that by this time Cox has made a claim for the post-March 2, 1979 period. The Secretary will thus have the benefit of later information about Cox's earnings and physical condition.